THOMAS E. DEVITT et al., Respondents, *v.* FRED C. SCHOTTIN, JR., Doing Business under the Name of NATIONAL PAINTING COMPANY et al., Defendants, and HAGLIN COMPANY, INC., et al., Appellants.

Argued January 26, 1937; decided April 27, 1937.

*Horace C. Winch* and *Charles F. Steele* for appellants. The complaint does not state sufficient facts to constitute a cause of action, and should have been dismissed. (*Matter of Miles*, 170 N. Y. 75; *Beebe* v. *Prime*, 99 Misc. Rep. 668; *Denniston* v. *Snyder*, 98 Misc. Rep. 44.) If section 220-b of the Labor Law (Cons. Laws, ch. 31) has the force claimed for it by the plaintiffs, it deprives the general contractors of their property without due process of law in contravention of section 1 of the Fourteenth Amendment of the Constitution of the United States and section 6 of article 1 of the Constitution of the State of New York. (*Garfield* v. *United States*, 211 U. S. 249; *Hovey* v. *Elliott*, 167 U. S. 409; *People* v. *Henriques & Co.*, 267 N. Y. 398; *Ives* v. *South Buffalo Ry. Co.*, 201 N. Y. 271; *Coe* v. *Armour Fertilizer Works*, 237 U. S. 413; *Stuart* v. *Palmer*, 74 N. Y. 183; *Wuchter* v. *Pizzutti*, 276 U. S. 13; *Louisville & Nashville Railway Co.*, v. *Central Stock Yards Co.*, 212 U. S. 132; *Londoner* v. *Denver*, 210 U. S. 373; *Central of Georgia Railway Co.* v. *Wright*,

207 U. S. 127; *Chicago, Milwaukee & St. Paul Ry. Co.* v. *Minnesota*, 134 U. S. 418; *Frost & Frost Trucking Co.* v. *Railroad Commission*, 271 U. S. 583.) Plaintiffs acquired no rights under the Lien Law (Cons. Laws, ch. 33). (*Stevens* v. *Ogden*, 130 N. Y. 182; *Liberty Bank* v. *Peckham Construction Co.*, 147 Misc. Rep. 165; *Crane* v. *Genin*, 60 N. Y. 127; *Ferguson* v. *Burk*, 4 E. D. Smith, 760; *Herrman & Grace* v. *Hillman*, 203 N. Y. 435; *Lackawanna Steel Constr. Co.* v. *Longacre Engineering & Constr. Co.*, 151 Misc. Rep. 17; *Anderson* v. *Hayes Constr. Co.*, 243 N. Y. 140; *Dempsey* v. *Mt. Sinai Hospital*, 186 App. Div. 334; 227 N. Y. 661; *Hollister* v. *Mott*, 132 N. Y. 18.)

*George W. Davis* and *Julius A. Schreiber* for respondents. Sections 220-a and 220-b of the Labor Law do not violate the Constitution of the United States and of the State of New York. (*Atkin* v. *Kansas*, 191 U. S. 207; *People ex rel. Cossey* v. *Grout*, 179 N. Y. 417; *Campbell* v. *City of New York*, 244 N. Y. 317.) Appellants, under sections 220-a and 220-b of the Labor Law, are liable for the payment of the wages of all laborers, whether in the employ of the contractors or the subcontractors. (*Hill* v. *American Surety Co.*, 200 U. S. 197.) Under section 25-a of the Lien Law the sum paid the general contractors constituted a trust fund in the hands of such contractors to be applied in payment of plaintiff's claims. (*Schuessler* v. *Mack*, 240 App. Div. 449; *Laski* v. *State*, 126 Misc. Rep. 360; 217 App. Div. 420; *Clarke Co.* v. *Plass & Bro., Inc.*, 107 Misc. Rep. 722; *Maneely* v. *City of New York*, 119 App. Div. 376.)

*John J. Bennett, Jr.*, Attorney-General (*Vincent Kiebala* and *Henry Epstein* of counsel), for State of New York, defendant. Sections 220-a and 220-b of the Labor Law impose an obligation on the general contractor to pay for all labor on a public work, whether performed by employees of the general contractor or those of a subcontractor. (*Hill* v. *American Surety Co.*, 200 U. S. 197.) Sections 220-a and 220-b of the Labor Law do not violate

any provisions of the Federal or State Constitutions. (*Campbell* v. *City of New York*, 244 N. Y. 317; 277 U. S. 573; *People ex rel. Williams Eng. & Con. Co.* v. *Metz*, 193 N. Y. 148; *People ex rel. Rodgers* v. *Coler*, 166 N. Y. 1; *Atkin* v. *Kansas*, 191 U. S. 207.)

LEHMAN, J. In January, 1933, the defendants-appellants C. F. Haglin & Sons Company, Inc. (now known as The Haglin Company, Inc.), and Winston Brothers, Inc., entered into a contract (known as contract No. 2397) with the State of New York for the construction of certain additions to the Gowanda State Hospital at Helmuth, N. Y. As general contractors they made a subcontract with the defendant Fred C. Schottin, Jr., whereby the subcontractor agreed to furnish the necessary labor and materials in connection with the painting and decorating of the building. The plaintiffs as employees of the subcontractor performed work, labor and services in connection with such painting and decorating. Their wages have not been paid. In February, 1935, Fred C. Schottin, Jr., their employer, filed with the Comptroller of the State of New York a statement in writing, pursuant to section 220-a of the Labor Law (Cons. Laws, ch. 31), certifying that the sum of $1,702.40 was due from him to the plaintiffs for wages on account of labor performed under contract No. 2397. The plaintiffs filed protests in writing objecting to the payment of moneys due to the contractors to the extent of the amounts due them. The Comptroller thereupon deducted from payments due to the *general contractors*, under their contract with the State, the amount which, according to the certificate of the *subcontractor*, was due from him to the plaintiffs. The plaintiffs then brought an action or proceeding in equity demanding judgment for the amounts due to them respectively and that the Comptroller of the State of New York be directed to pay such amounts to the plaintiffs out of the moneys withheld by him under contract No. 2397 from the general contractor.

The evidence and findings establish that the work for which the plaintiffs seek payment was performed " at the special instance and request " of the subcontractor. The obligation to pay for that work rests upon the subcontractor who assumed that obligation by voluntary agreement, express or implied. There is neither evidence nor findings that the work was performed at the special instance and request of the general contractors. The State made a contract with the general contractors for the construction of a public improvement. It agreed to pay the contractors the stipulated price; it made no agreement to pay any other person performing labor or furnishing materials in connection with the contract. The contractors in turn made a contract with the subcontractor for part of the work. They agreed to pay the stipulated price to the subcontractor, but they assumed in that contract no obligation to pay any person performing labor or furnishing materials to the subcontractor. The plaintiffs do not assert any personal obligation on the part of the general contractors to pay them for the labor they performed at the special instance and request of the subcontractor. In effect, their claim is that the moneys payable by the State to the general contractors constitute a fund to which any person performing work on the public improvement may have recourse to obtain payment of daily or weekly wages by appropriate proceedings authorized by sections 220-a and 220-b of the Labor Law.

These sections provide:

" § 220-a. Statements showing amounts due for wages to be filed— Verification. Before payment is made by or on behalf of the state or of any city, county, town, village or other civil division of the state of any sum or sums due on account of a contract for a public improvement it shall be the duty of the comptroller of the state or the financial officer of the municipal corporation or other officer or person charged with the custody and dis-

bursement of the state or corporate funds applicable to the contract under and pursuant to which payment is made to require the contractor and each and every subcontractor from the contractor of (or) a subcontractor to file a statement in writing in form satisfactory to such officer certifying to the amounts then due and owing from such contractor or subcontractor filing such statement to any and all laborers for daily or weekly wages on account of labor performed upon the work under the contract, setting forth therein the names of the persons whose wages are unpaid and the amount due to each respectively, which statement so to be filed shall be verified by the oath of the contractor or subcontractor as the case may be that he has read such statement subscribed by him and knows the contents thereof, and that the same is true of his own knowledge.

" § 220-b. Amounts due for wages may be withheld for benefit of laborers. In case any interested person shall have previously filed a protest in writing objecting to the payment to any contractor or subcontractor to the extent of the amount or amounts due or to become due to him for daily or weekly wages for labor performed on the public improvement for which such contract was entered into, or if for any other reason it may be deemed advisable, the comptroller of the state or the financial officer of the municipal corporation or other officer or person charged with the custody and disbursement of the state or corporate funds applicable to the contract for such public improvement may deduct from the whole amount of any payment on account thereof the sum or sums admitted by any contractor or subcontractor in such statement or statements so filed to be due and owing by him on account of labor performed on such public improvement before making payment of the amount certified for payment in any estimate or voucher, and may withhold the amount so deducted for the benefit of the

laborers for daily or weekly wages whose wages are unpaid as shown by the verified statements filed by any contractor or subcontractor, and may pay directly to any person the amount or amounts shown to be due to him for such wages by the statements filed as hereinbefore required, thereby discharging the obligation of the contractor or subcontractor to the person receiving such payment to the extent of the amount thereof."

Under the Lien Law (Cons. Laws, ch. 33), section 5, a person " performing labor for or furnishing materials . to a contractor, his subcontractor or legal representative, for the construction of a public improvement," pursuant to a contract by such contractor with the State, is given a lien for its value or agreed price " upon the moneys of the state * * * applicable to the construction of such improvement, to the extent of the amount due or to become due on such contract * * *." Laborers are given a preference over other lienors, but the lien for unpaid wages owed by a subcontractor is enforceable only to the extent that money is due or about to become due to the immediate employer. (Cf. *Upson* v. *United Engineering & Contracting Co.*, 72 Misc. Rep. 541, and cases there cited, opinion by POUND, J.) If the contractor owes no money to the subcontractor, then laborers employed by the subcontractor, like persons furnishing materials to the subcontractor, may go unpaid.

Sections 220-a and 220-b of the Labor Law have no purpose apparent except to grant some additional protection to laborers and especially to laborers employed by subcontractors. The extent of such additional protection, and even whether the Legislature effectively granted any additional protection, is more doubtful. The appellant contractors maintain that if these sections are intended to authorize the comptroller to deduct from payments due to the *contractor* the amount which the *subcontractor* certifies is due from *him* to his own laborers and to pay such amount to the laborers, then the statute

deprives them of their property without due process of law. We postpone consideration of the validity of the statute until we have determined its intended scope.

The Legislature might easily have amended the Lien Law to provide that the lien of a laborer for unpaid wages might be enforced even though his immediate employer was not entitled to any part of the moneys due from the State. It chose not to do so, but it is said that it has indirectly done that and more by providing that each contractor and each subcontractor from a contractor must file a statement " certifying to the amounts then due and owing from such contractor  *  *  *  filing such statement to any and all laborers for daily or weekly wages " and by authorizing the Comptroller in proper case to deduct from payments due by the State " the sum or sums admitted " to be due " by any contractor or subcontractor." The language of the statute might permit the construction that the Comptroller is authorized to deduct from payments due *to* a contractor the amounts admitted by such contractor to be due *from him* for wages, and might deduct from payments due *to* the subcontractor the amounts admitted by the subcontractor to be due *from him*. A statute which so provides would not be unreasonable. The difficulty with such construction is that rarely — perhaps never — are moneys due from the State to a " subcontractor from a contractor." We may not impute to the Legislature an intent to make a futile gesture. On the other hand, we may not impute to the Legislature by doubtful implication an intent to give a laborer recourse for payment of wages to moneys belonging to the general contractor, to which the immediate employer was not entitled, where the immediate employer had admitted that wages were unpaid, and to deny such recourse where the immediate employer refused to make such admission. That construction would make the rights of laborer or general contractor in the fund dependent upon the act of a third party.

The statute contains no language which indicates a legislative intent to impose upon a contractor any obligation to pay wages due from a subcontractor where no such obligation existed before. It says that the Comptroller " may " deduct from moneys due from the State the sum or sums admitted by any contractor or subcontractor to be due and owing by him for wages; and " may " pay the sums deducted directly to the laborer. It does not in terms require the Comptroller to make such deductions or payments. It is evident that the Legislature intended to leave some discretion here to the Comptroller, though we may assume that such discretion was not intended to be plenary. Exercise of such authority would protect laborers employed by a subcontractor without causing injustice to a contractor where the contractor had agreed with the State to be responsible for defaults of his subcontractors, and where the contractor is given opportunity to contest the truth of the admission of a default. Though a notice of lien for unpaid wages filed by a laborer employed by a subcontractor pursuant to section 5 of the Lien Law can be enforced only to the extent that moneys are or may become due thereafter to the immediate employer, yet the mere filing of a lien may cause inconvenience to a contractor and often, under the terms of his contract, prevent him from collecting moneys due him from the State until such liens are removed. Exercise of authority conferred upon the Comptroller to deduct from payments otherwise due to the contractor the amount of wages owed not by the contractor but by a subcontractor and to apply the sum deducted in satisfaction of wages for which otherwise liens might be filed, may at times prove of actual benefit to the contractor. The Legislature, in sections 220-a and 220-b, has provided, then, a method by which in some cases, at least, a laborer's right to payment of wages may be protected without harm or even with positive advantage to the contractor. There is no reason to believe that the Legislature intended to impose upon a con-

tractor any obligation to pay wages to laborers of a sub-contractor where such obligation did not previously exist. Doubtless it assumed that in many cases such obligation did exist and that in many cases exercise of the authority conferred upon the Comptroller would prove of practical benefit to honest contractors as well as laborers. Analysis of the statute seems to demonstrate almost beyond possibility of dispute that the Legislature intended to grant a permissive power to be exercised in such cases. It appears that the statute was drafted in the office of the Corporation Counsel of the city of New York, and the explanatory memorandum filed with the bill by the Corporation Counsel shows that this was the intention at least of the draftsman.

The assumption of the Legislature that even without the new sections a contractor upon a public improvement is ordinarily under an obligation to see that laborers employed upon the work even by subcontractors are paid was shared by the Attorney-General (Opinion of Attorney-General [1933], p. 321.) Upon what is that assumption based? Since such obligation is not imposed by any statute it can rest only upon a general practice of the State to require a contractor for the construction of a public improvement to provide in the contract that he will see that all laborers performing work upon the improvement for daily or weekly wages will be paid.

The record does not inform us whether in 1932, when these sections were enacted, it was the custom of the State to require such provisions in the contracts it made. The contract made thereafter in this case is part of the record. It expressly makes sections 220-a and 220-b part of the contract, and provides that the contractor " must keep full control of the subcontractors and be responsible for them." Under a fair construction of the contract, it appears plain that the parties to the contract intended that the responsibility of the contractor for his subcon-tractors would extend to the payment of wages, and, where the subcontractor failed to pay them, payment

would be enforceable in manner authorized by sections 220-a and 220-b. We need not consider whether the statute has application in cases where the contract with the State imposes no responsibility upon the contractor for wages due from a subcontractor, if such contracts there be.

Since the contractor voluntarily entered into a contract with the State assuming such responsibility, the question of how far the Legislature might go in imposing it is not before us. The contractor is bound by the terms of his contract, which embody the sections of the statute which are now challenged.

The judgment should, therefore, be affirmed, with costs.

CRANE, Ch. J., O'BRIEN, LOUGHRAN, FINCH and RIPPEY, JJ., concur; HUBBS, J., taking no part.

Judgment affirmed.