CHITTENDEN LUMBER COMPANY, INC., Appellant, *v.* SILBERBLATT & LASKER, INC., et al., Respondents, and SUMMERS LUMBER AND SUPPLY CORPORATION et al., Appellants, Impleaded with Others.

Argued May 29, 1942; decided July 29, 1942.

*Sidney Jarcho* for plaintiff-appellant. The establishment of mechanic's liens is not a prerequisite to liability on the labor and material bond. (*Chase Nat. Bank* v. *Guardian Realties, Inc.*, 283 N. Y. 350; *Wiley* v. *Solvay Process Co.*, 215 N. Y. 584; *McClare* v. *Mass. Bonding & Ins. Co.*, 266 N. Y. 371; *Johnson Service Co.* v. *Monin, Inc.*, 253 N. Y. 417; *Fosmire* v. *National Surety Co.*, 229 N. Y. 44; *Devitt* v. *Schottin*, 274 N. Y. 188; *French* v. *Bauer*, 134 N. Y. 548; *Herrmann & Grace* v. *City of New York*, 130 App. Div. 531; 199 N. Y. 600; *Sexauer & Lemke* v. *Burke & Sons Co.*, 228 N. Y. 341; *Seaboard Surety Co.* v. *Standard Acc. Ins. Co.*, 277 N. Y. 429.)

*George Simon, Maxwell Berman* and *James H. Barrett* for defendants-appellants. Laborers and materialmen who furnish labor or material for a public improvement to a subcontractor may recover upon a bond posted by the general contractor, pursuant to section 137 of the State Finance Law (Cons. Laws, ch. 56), regardless of whether anything is due from the general contractor to the subcontractor. (*Devitt* v. *Schottin*, 274 N. Y. 188; *Schuessler* v. *Met. Casualty Ins. Co.*, 240 App. Div. 499; 265 N. Y. 648; *Herrmann* v. *Hillman*, 203 N. Y. 435; *Upson* v. *United Engineering & Contracting Co.*, 72 Misc. Rep. 541; *Powers* v. *City of Yonkers*, 114 N. Y. 145; *Fosmire* v. *National Surety Co.*, 104 Misc. Rep. 166; *Stanton* v. *Babor-Comeau & Co.*, 168 Misc. Rep. 190; 260 App. Div. 831; *Hill* v. *American Surety Co.*, 200 U. S. 197; *Mankin* v. *Ludowici-Celadon Co.*, 215 U. S. 533; *Strong* v. *American Fence Constr. Co.*, 245 N. Y. 48; *Seaboard Surety Co.* v. *Standard Accident Ins. Co.*, 277 N. Y. 429.)

*W. Randolph Montgomery* and *Irving T. Bush* for New York Credit Men's Association, *amicus curiæ*. Section 137 of the State Finance Law was enacted to provide protection to laborers and materialmen in cases where the protection afforded by the Lien Law is inadequate. (*Upson* v. *United Engineering & Contracting Co.*, 72 Misc. Rep. 541; *Devitt* v. *Schottin*, 274 N. Y. 188.)

*George M. Simon* and *Edward C. McLean* for McClung, Peters & Simon and Hatch, McLean, Root & Hinch, *amici curiæ*. Laborers and materialmen who furnish labor or material for a public improvement to a sub-contractor may recover upon a bond posted by the general contractor, pursuant to section 137 of the State Finance Law, regardless of whether anything is due from the general contractor to the sub-contractor. (*Devitt* v. *Schottin*, 274 N. Y. 188; *Schuessler* v. *Met. Casualty Ins. Co.*, 240 App. Div. 499; 265 N. Y. 648; *Herrmann & Grace* v. *Hillman*, 203 N. Y. 435; *Fosmire* v. *National Surety Co.*, 104 Misc. Rep. 170; *Maryland Casualty Co.* v. *Dunkirk*, 66 Fed. Rep. [2d] 730; *Stanton* v. *Babor-Comeau & Co.*, 168 Misc. Rep. 190; 260 App. Div. 831; *Strong* v. *American Fence Constr. Co.*, 245 N. Y. 48.)

*Max E. Greenberg* for respondents. Claimants may not recover on the bond since they cannot enforce a mechanic's lien. (*Davidson* v. *Gaston*, 16 Minn. 230; *Ticknor* v. *Kennedy*, 3 Abb. Prac. [N. S.] 387; *Acme Brick Co.* v. *Swim*, 168 Ark. 185; *Stewart-McGhee Const. Co.* v. *Brewster Co.*, 171 Ark. 197; *Hub Oil Co.* v. *Jodomar, Inc.*, 176 Misc. Rep. 320.) The bond covers claims for labor or material only and not for equipment rentals, the price of equipment, tolls or labor, etc., connected with the transportation or erection of equipment rented. (*Hub Oil Co.* v. *Jodomar, Inc.*, 176 Misc. Rep. 320; *Troy Public Works Co.* v. *City of Yonkers*, 68 Misc. Rep. 372; 145 App. Div. 527; *Black Co.* v. *Surdam Holding Corp.*, 140 Misc. Rep. 113; *Nehr Culvert & Mfg. Co.* v. *Freeman*, 197 Iowa, 720; *McAuliffe* v. *Jorgensen*, 107 Wis. 132.)

LEWIS, J. In the construction of a public improvement at Kings Park State Hospital the defendant-respondent, Silberblatt & Lasker, Inc., was the general contractor. Dixon Concrete Construction Co. Inc., held a subcontract for certain concrete work

required under the general contract. When Dixon defaulted on its subcontract the work was completed by the general contractor at a cost exceeding any balance due the sub-contractor. The plaintiff-appellant and each of the defendants-appellants had supplied the sub-contractor with building materials or the use of construction equipment employed in carrying out the contract with the State. Each of the appellants, as an unpaid creditor of the sub-contractor, filed a notice of lien and each has sued to foreclose its lien. As no money was due from the general contractor to the subcontractor following the completion of the defaulted subcontract the efforts by the creditor-lienors to recover under the Lien Law were futile. (Lien Law, § 5; Cons. Laws, ch. 33; *Devitt* v. *Schottin*, 274 N. Y. 188, 194; *Schuessler* v. *Metropolitan Casualty Ins. Co.*, 240 App. Div. 449; affd., 265 N. Y. 48; *Herrmann & Grace* v. *Hillman*, 203 N. Y. 435, 440, 441.)

In the state of the law prior to 1938, the courts, and apparently the Legislature, recognized the fact that " if [as in the case at bar] the contractor owes no money to the subcontractor, then laborers employed by the subcontractor, like persons furnishing materials to the subcontractor, may go unpaid." (*Devitt* v. *Schottin, supra*, p. 194; and see Report of the Joint Legislative Committee on State Fiscal Policies [Leg. Doc. No. 41, 161st Session] at p. 158.) In an apparent effort to afford greater protection to laborers and materialmen on public improvement contracts with the State, the Legislature by chapter 707 of the Laws of 1938, added to the State Finance Law (Cons. Laws, ch. 56) a new section (38a) which was later renumbered section 137 (L. 1940, ch. 593) and provides as follows:

" 137. *Bond to secure laborers and materialmen.* In addition to other bond or bonds, if any, required by law for the completion of a work specified in a contract for the prosecution of a public improvement for the state of New York, or in the absence of any such requirement, the comptroller may nevertheless require prior to the approval of any such contract a bond *guaranteeing prompt payment of moneys due to all persons supplying the* contractor or *a sub-contractor with labor and materials employed* and used in carrying out the contract, which bond shall inure to the benefit of the persons supplying such labor and materials. In order to secure any rights and benefits conferred herein, laborers having claims for

unpaid wages shall file and enforce a wage claim as provided by the labor law or shall file and enforce a mechanic's lien pursuant to the provisions of the lien law, and a *materialman, in order to secure any such rights and benefits, shall file and enforce a mechanic's lien* pursuant to the provisions of the lien law." (Emphasis supplied.)

In the present case the Comptroller exercised the right given him by section 137 and accordingly, prior to his approval of the public improvement contract involved herein, he required of, and was furnished by the general contractor a" bond to secure laborers and materialmen," as provided by the statute. Upon that bond the respondent Silberblatt & Lasker Inc., the general contractor, is principal and the respondent insurance company is surety. The bond provides: " Whereas, the Comptroller of the State of New York, under the terms of Chapter 707 of the Laws of 1938, has required this bond *guaranteeing prompt payment of moneys due to all persons supplying the contractor or a sub-contractor with labor and materials employed and used in carrying out the contract, which bond shall inure to the benefit of the persons supplying such labor and materials.* Now, therefore, the condition of the foregoing obligation is such, that if the said Principal shall *promptly pay all moneys due to all persons supplying* the contractor or a *sub-contractor with labor and materials employed and used in carrying out the contract,* then this obligation shall be null and void, otherwise, to remain in full force and virtue." (Emphasis supplied.)

In the complaint now before us the first cause of action is for the foreclosure of a mechanic's lien filed by the plaintiff-appellant as a materialman. The other appellants served answers containing counterclaims for the foreclosure of mechanics' liens duly filed by each of them. There being no fund to which the appellants' liens could attach it follows that, although the appellants as lienors have pursued their remedies under the Lien Law, judgment in their favor on the first cause of action must be denied. (Lien Law, § 5; *Devitt* v. *Schottin, supra,* p. 194.)

As to the second cause of action, which is brought as a class action in behalf of the plaintiff and all others similarly situated (see *Bleimeyer* v. *Public Service M. C. Ins. Corp.,* 250 N. Y. 264, 269) the plaintiff-appellant, and the defendants-appellants by counterclaims in their answers, demand payment of sums due to

them respectively from the sub-contractor, which demands are based upon obligations incurred by the principal and surety when the labor and material bond, quoted in part above, was executed.

Following the service of answers by the present respondents and the appellant lienors, Special Term denied the plaintiff's application, under rule 113 of the Rules of Civil Practice, for an order striking out the answer of the general contractor and its surety and for judgment in favor of the plaintiff and the defendant lienors. By the same order Special Term granted a cross-motion by the general contractor and its surety under rule 113 (*id*) for an order dismissing the complaint of the plaintiff and the counter-claims of the defendant lienors. The judgment entered upon the order of Special Term was thereafter affirmed by the Appellate Division, one justice dissenting. The case comes before us on appeal by the plaintiff and defendant lienors as of right.

The interpretation of section 137 of the State Finance Law for which the general contractor and its surety contend, would deny recovery herein to the appellant lienors because there is no fund due the sub-contractor to which their liens may attach. The respondents' argument runs as follows: It is conceded that following default by the sub-contractor the cost of completion of the sub-contract by the general contractor exceeded any balance due thereupon and left no fund to which liens filed by the appellant lienors could attach. That fact, it is said, serves to defeat the appellant lienors' right to recover on the labor and material bond, executed by the general contractor and its surety, because section 137 of the State Finance Law provides that in order to secure the rights and benefits afforded by that statute, " a materialman * * * shall file and enforce a mechanic's lien pursuant to the provisions of the lien law."

We think that an interpretation so literal as the one urged upon us by the respondents is not to be applied to section 137 of the State Finance Law which manifestly had for its purpose to give protection to laborers and materialmen in situations of which the one here involved is typical. In construing a statute — " Adherence to the letter will not be suffered to ' defeat the general purpose and manifest policy intended to be promoted.' " (*Surace* v. *Danna*, 248 N. Y. 18, 21; *People* v. *Ryan*, 274 N. Y. 149, 152; *Hill* v. *American Surety Co.*, 200 U. S. 197, 202, 203.)

Here " * * * we view the parts of the statute without reference to verbal niceties, but rather in their logical relation as means directed to an end." (*City Bank Farmers' Trust Co.* v. *N. Y. C. R. R. Co.*, 253 N. Y. 49, 55.) The end sought to be accomplished by section 137 was foreshadowed by the Report of the Joint Legislative Committee on State Fiscal Policies (Leg. Doc. No. 41, 1938) which was filed with the Legislature at the session at which the statute was enacted. That report drew attention to the lack of protection given by the Lien Law to those who furnish materials in connection with State contracts. It emphasized the need of additional statutory protection for material-men in those cases where the contractor defaults. Promptly after the filing of the Legislative Committee report mentioned above there followed the enactment of the statute we are now called upon to interpret.

The construction of section 137 for which the respondents contend would give to those who furnish labor and materials on State contracts no greater assurance that they would be paid what is due them, than they had before the enactment of the statute here involved. The respondents disregard the significance of the first sentence of the statute which provides that the bond authorized by the act is " In addition to other bond or bonds * * * required by law for the completion of a work specified in a [public improvement] contract." They give no weight to the precise language by which the Legislature described the function of the bond which was required by the Comptroller in the present case, viz — a "bond guaranteeing prompt payment of moneys due to all persons supplying the contractor or a sub-contractor with labor and materials employed and used in carrying out the contract * * *." Nor do the respondents consider the care with which the Legislature identified those for whom the additional protection was intended —" * * * which bond shall inure to the benefit of the persons supplying such labor and materials."

The language of the bond itself, which the Comptroller has approved, gives no indication of the limitation upon the respondents' obligation thereunder which they now assert. The statement of that obligation follows the language of the statute and guarantees prompt payment by the general contractor of " all moneys due to

all persons supplying the contractor or a sub-contractor with labor and materials employed and used in carrying out the contract."

If, as claimed by the respondents, the appellants as materialmen may recover the sums due to them from the sub-contractor only in the event there is a fund payable to the sub-contractor to which the appellants' liens will attach, there would be no necessity for the bond here in suit. Liability on a bond required by the Comptroller under section 137 was not intended to be contingent upon the existence of a lienable fund. The " benefits " which the Legislature, by the enactment of section 137, intended to grant to laborers and materialmen, are found in the guarantee of payment afforded by the bond in those instances where there is no fund, or an insufficient fund, due the contractor or sub-contractor on a State public improvement, against which the enforcement of valid and existing liens may lead to the payment thereof. Thus construed section 137 supplements the Lien Law and Labor Law (Cons. Laws, chapters 33 and 31) and affords to laborers and materialmen on State public improvements the added protection which the Legislature recognized as needful.

The language to be found in the last sentence of section 137 — which we think has been erroneously interpreted by the respondents to defeat the appellants' claim against the bond here in suit — was intended to limit claims against such a bond to those who have furnished labor or materials in connection with a State public improvement and who, after compliance with the provisions of the Lien Law or the Labor Law, as the case may be, have failed in their efforts to enforce payment of their claims by reason of there being no funds, or a lack of sufficient funds, due the contractor or sub-contractor from which such payments can be made.

There remain for consideration claims against the bond by those appellant-lienors who filed liens for the use of construction equipment supplied to the sub-contractor in carrying out the contract. Those liens would have been enforceable under the Lien Law had there been a fund due the sub-contractor sufficient in amount to make payment thereupon, and provided the proof in support of such liens established a " reasonable rental value for the period of actual use of machinery, tools and equipment [or] the value of compressed gases furnished for welding or cutting." [Lien

Law, § 2 [as amd. by L. 1937, ch. 535] and § 5.)   It was the lack of funds due the sub-contractor at the time of its default which defeated the enforcement of payment by such lienors.   (*Devitt* v. *Schottin, supra,* p. 194.)   By the enactment of section 137 of the State Finance Law the Legislature intended, as we have seen, to supplement those provisions of the Lien Law and Labor Law which facilitated payment for labor and materials furnished for a State public improvement.   To that end we find employed by the Legislature in section 137, language which relates that statute to provisions of the Lien Law dealing with the enforcement of a mechanic's lien.   That correlation indicates the Legislature's intention by section 137 of the State Finance Law to afford additional assurance of payment to laborers and to materialmen as defined by section 2 of the Lien Law, prior to July 1, 1937, and to materialmen as defined by the amendment to that section effective on that date.   (L. 1937, ch. 535, effective July 1, 1937.)

The judgments should be reversed; the motion by the plaintiff-appellant under rule 113 of the Rules of Civil Practice for an order striking out the answer of the general contractor and its surety and for judgment in favor of the plaintiff and the defendant-lienors should be granted; the cross-motion by the defendants-respondents Silberblatt & Lasker, Inc., the general contractor, and Standard Accident Insurance Company, its surety, under rule 113 (*id.*) for an order dismissing the complaint of the plaintiff and the counter-claims of the defendant-lienors should be denied, with costs in all courts.

LEHMAN, Ch. J., LOUGHRAN, FINCH, RIPPEY, CONWAY and DESMOND, JJ., concur.

Judgments reversed, etc.