Michael Catalano, J.
Plaintiff demands judgment for $27,918.56, as rental for dump trucks and high lift with drivers and operators furnished to defendant, Franjoine Trucking, Inc., (Franjoine) an alleged subcontractor of defendant Johnson, Drake & Piper, Inc., (Johnson) general contractor of the State of New York for the partial construction of the Niagara Parkway between the Grand Island Bridge and Lewiston-Queenston Bridge.
Plaintiff’s second amended complaint alleges four causes of action: First, to foreclose its mechanic’s lien against Franjoine, as subcontractor of Johnson, as general contractor, under John *996 son’s contract with defendant, State of New York, numbered HC6379, NP62-1, RC 62-115, dated June 7, 1962; Second, to recover against Johnson, as principal on a bond, and defendant, Continental Casualty Company (Continental), as surety thereon; Third, to recover trust funds against Johnson pursuant to article 3-A of the Lien Law; Fourth, to recover trust funds against Franjoine pursuant to this law.
Franjoine denies generally, but seeks no affirmative relief. Defendants C. F. H. Contracting, Bonfiglio, Caselinuovo, Spina, and Foti counterclaim and cross-claim to foreclose their liens, cross-claim against Johnson and Continental on the bond, and cross-claim against Franjoine pursuant to subdivision 2 of section 71 of the Lien Law for any deficiency. Defendant Fago cross-claims against Johnson and Franjoine to foreclose its lien.
All other defendants failed to appear at the trial.
May 6, 1964, the Supreme Court, Niagara Special Term, denied the motion of Johnson and Continental to dismiss the first three causes of action in the complaint, or in the alternative, for summary judgment in their favor dismissing those actions, and granted partial summary judgment to plaintiff adjudging its lien to be valid because “ the party to which it furnished labor and equipment, Franjoine Trucking, Inc., was a subcontractor of Johnson, Drake & Piper, Inc. in the performance of the contracts involved in this action.”
March 31,1966, the Fourth Department modified by reversing that portion of the above-mentioned order which granted summary judgment, ‘ ‘ on the ground that a triable issue exists as to the status of Franjoine, and as so modified affirmed”, saying:
‘ ‘ Under the facts in this case a trial is required to determine whether Franjoine Trucking, Inc., was a subcontractor or merely a materialman on the construction project * * * the existence of a contract between it and the general contractor does not in itself constitute a materialman a subcontractor ’ ’. (25 AD 2d 716, 717.)
In this trial, the court should consider all contractual documents in complete context to determine to what extent, if any, Franjoine’s agreements may have contemplated work upon the site which would otherwise have to be performed by Johnson, the general contractor, in direct performance of the prime contract; also, the court should consider what work, if any, away from the site was actually done in performance of the prime contract to be paid as part of the unit contract price. (Dorn v. Johnson Corp., 16 A D 2d 1009,1010.)
This job consisted of building the Niagara Parkway, Niagara Expressway and Lewiston Road for two miles between the *997 Grand Island Bridge and the Queenston Bridge. The prime contract was let May 24, 1962, awarded June 6, 1962, dated June 14, 1962, and was to be completed December 31, 1963; the general contractor was Johnson.
The labor and material bond executed on June 7, 1962 by Johnson, as principal, and Continental, as surety, in the sum of $8,934,625.25, was conditioned as follows: “that if the said Principal shall promptly pay all moneys due to all persons supplying the contractor or a sub-contractor with labor and materials employed and used in carrying out the contract, then this obligation shall be null and void, otherwise, to remain in full force and virtue.”
The contract between Johnson, as general contractor, and Franjoine, as subcontractor, consisted of two major purchase orders dated July 11, 1962 and September 18, 1962, respectively, covering items ordered in the construction of the Niagara Parkway NY 62-1, under a general contract dated June 15, 1962 with the New York State Department of Public Works, to be performed in accordance with the plans and specifications and subject to the general contract; Job No. 475. -
The first order prepared and executed by Johnson states: “ Furnish, load and deliver. Job requirements Item 2 EFB-Selected Fill, unit price, 1.62/CY Engrs. Meas., Item 2 UFUnderdrain Filter, unit price 1.72/CY Engrs. Meas., Item 39-Found. Crse, Gran. Material, unit price 1.72/CY Engrs. Meas., Item 119 A-Bank Gravel Fill, unit price 1.72/CY Engrs. Meas. Trucking at the rate of $1.15 per cubic yard Engineer’s Measure to be paid every two weeks. Delivery to be made on or before as requested.”
The second order, also prepared and executed by Johnson, states: “ Bun of Crusher Bock from New York Stone Co. Stockpile suitable for various Items of Contract NP 62-1, BC 62-115. Job requirements, Trucking Only, Unit price, .83/C.Y. Engr. Meas, in Place, Trucking and Loading, unit price, 1.00/C.Y. Engr. Meas, in Place. Delivery to be made on or before as Bequested.”
The prime contract specifications defined certain items as follows: Item 2 E F-B-Selected Fill is “ Bun-of-Bank Gravel or Sand, Slag, Waste Quarry Stone, Stone Screenings or other acceptable granular material, the particules of which shall be of such size not more than 70 percent, by weight, shall pass the No. 40 mesh sieve, and not more than 15 percent, by weight, shall pass the No. 200 mesh sieve.” This item is to be “ placed and disposed of as required by the plans and specifications.”
*998 Item 2 UF- — Underdrain Filter is “durable stone or slag.”
Item 39 — Foundation Course — Granular material is somewhat similar to Item 2 E F-B, which the “ Contractor shall furnish and place ” and the “ material shall be spread.”
Item 119-A — Bank Gravel Fill is “ durable stone or slag,” which the “ Contractor shall furnish and place.”
Although Johnson prepared and executed a third major purchase order dated July 11, 1962 for the purchase of 3.20 tons of concrete sand, Franjoine did not “ furnish and deliver ” it as requested.
The prime contract specifications state: “ The Contractor specifically agrees, as required by the State Finance Law, Section 138, that (a) he is prohibited by law from assigning, transferring, conveying, subletting or otherwise disposing of the contract, or of his right, title or interest therein, or his power to execute such contract to any other person, company or corporation, without the previous consent in writing of the Superintendent ” (Meaning the New York State Superintendent of Public Works.) Johnson did not apply to the Superintendent for approval of any of its subcontractors on this job, nor did the Superintendent approve any of the 19 of them in writing.
Johnson referred to Franjoine as a “ subcontractor ” in making partial payment estimates and' in “ subcontractor ” forms prepared by Johnson. Each of such forms stated — “Work completed and/or materials and labor in place, and/or materials on site thru December 15th, 1962.” On Johnson’s folder, kept in its business files, were the words: ‘ ‘ Franjoine Trucking, Inc. Subcontractor 475.” Johnson’s cashier prepared a list of “subcontractors ” and “ suppliers and others ” on this job No. 475; Franjoine’s name appeared under the caption “subcontractors;” the names of C. F. H. Contracting Co., Bonfiglio, Caselinuovo, Spina, Fago and Foti appeared under the words “ suppliers and others;” neither plaintiff’s name nor any of the said defendants’ names appeared under the title of “ disputed amount.”
Payments were made by the State to. Johnson based upon estimates of contract performance, after deducting and retaining 10% of the gross amount due.
Johnson, in turn, used its own form, which it drew for Franjoine, captioned in capital letters: “ Partial Payment Estimate For Subcontractor,” specifying the “ subcontract date 7-16-62 ” and the “ subcontract amount,” naming Franjoine as “ Subcontractor ” covering estimates of “work completed and/or materials and labor in place, and/or materials on site thru,” deducting and retaining 10% of earnings. Twenty such forms
*999 were used by Johnson naming Franjoine as its subcontractor on this job No. 475.
December 20, 1962 Johnson backcharged Franjoine for trucking furnished by Fred Staffen Trucking in the amount of $5,330, without having any trip tickets to justify this charge.
Franjoine rented a truck and driver from plaintiff for $10 per hour and to Johnson for $11 per hour; hauled a ton of stone owned by Johnson for 70 cents per ton; rented a high lift and operator to Johnson for $15 per hour.
Franjoine used thousands of trip tickets on this job. Plaintiff’s trip tickets, which are the basis for its claim, included hours of trucking for others than Johnson, to wit:
September 25, 1962, truck No. 47, included time for North French Boad of 1% hours,
September 26, 1962, truck No. 47, included time for Philsan Const. Co. of 1% hours,
October 9, 1962, truck No. 47, included time for North French Boad of 2 hours,
October 10,1962, truck No. 47, included time for North French Boad of 1% hours,
October 16, 1962, truck No. 47, included time for Philsan Const. Co. of 2 hours,
October 19, 1962, truck No. 47, included time for Philsan Construction Co. of 2 hours.
Therefore, there should have been a credit to Johnson of 10% hours, at $10 per hour or a total credit of $105 to be deducted from plaintiff’s claim.
The stone delivered or delivered and loaded, by Franjoine for Johnson to the job site from the New York Stone Company (New York Stone) or the Niagara Stone Company (Niagara Stone) was purchased from those companies by Johnson. Often, Franjoine trucks spent entire days upon the job site merely trucking materials from one point to another for Johnson.
Often Clarence Franjoine, president of Franjoine, worked at the job site, assisting in the placement of materials, especially at sewer locations.
Fifty to 60% of the gravel and crushed rock was delivered, by trucks owned or rented by Franjoine, to the job site, dumped in a pile or piles designed by Johnson’s “ dump boy,” or spread on the road bed by adjusting chains on the rear truck gate, then moving forward as the load was spread, or road material owned by Johnson was delivered and dumped at the job site.
In 1962, throughout the Niagara Falls, New York, area, it was the usage and custom in the road-building business that a seller would deliver his product to the job site of the roadbed, then *1000 dump it; or, if helping to build the road, the seller would spread the product on the roadbed with the use of tailgate chains.
June 7,1962, Johnson entered into this written contract known as Contract HC 6379 (NP 62-1, EC 62-115) with the State for the construction of said public improvements in the amount of $8,934,625.25. Johnson received payments on account from the State, and partially performed by November 28, 1962 when plaintiff duly filed its notice of lien for $27,918.56, (less said credit of $105, to be deducted, leaving a balance of $27,813.56) at which time, money became due and owing to Johnson from the State therefor.
Franjoine owes the following defendants for truck or high-lift rentals in this job according to open-court stipulations :
Bonfiglio, $10,473.60, plus interest from January 1, 1963; notice of lien duly filed February 25, 1963; bond for $11,700 posted by Johnson with Continental as surety for any judgment granted foreclosing said lien;
Foti, $2,349.40 plus interest from January 1, 1963; notice of lien duly filed August 13, 1963; on September 5, 1963 the State withheld from estimate No. 20 due Johnson the sum of $2,317.50 as security for any judgment rendered in foreclosing said lien ;
Spina, $8,625.75 plus interest from December 3, 1962; notice of lien duly filed April 3, 1963;
Fago, $8,800 plus interest from January 15, 1963; notice of lien duly filed August 1, 1963; bonded at $9,600 by Johnson and Continental;
C. F. H. Contracting, $4,500 plus interest from December 12, 1962; notice of lien duly filed February 11, 1963;
Caselinuovo, $1,000 plus interest from January 1, 1963; notice of lien duly filed March 19, 1963; bonded at $1,900 by Johnson and Continental.
As of November 20,1962, Franjoine received $64,685.11 from Johnson which owes Franjoine $108,000.
As of November 21, 1962, Franjoine admitted owing plaintiff $27,918.56 (less $105. supra) ;• the total billings by plaintiff to Franjoine were $43,627.03, of which $15,708.47 was paid.
As of December 27, 1965, the State owed Johnson $3,183.50.
Section 2 of the Lien Law entitled “ Definitions ”, provides, in part:
‘110. Subcontractor. The term ‘ subcontractor ’ when used in this chapter, means a person who enters into a contract with a contractor and/or with a subcontractor for the improvement of such real property or such public improvement or with a person who has contracted with or through such contractor for *1001 the"performance of his contract or any part thereof. (Emphasis supplied.)
‘111. Laborer. The term ‘ laborer, ’ when used in this chapter, means any person who performs labor or services upon such improvement.
‘ ‘ 12. Materialman. The term ‘ materialman ’ when used in this chapter, means any person who furnishes material or the use of machinery, tools, or equipment * * * either to an owner, contractor or subcontractor, for, or in the prosecution of such improvement.
“ The expression ‘ furnishes material ’ or other similar expression wherever used in this chapter shall be deemed to mean and include the reasonable rental value for the period of actual use of machinery, tools or equipment ’ ’.
“ Excessive caution of the New York courts [has been noted] in recognizing the rights of materialmen and laborers to sue upon contractors’ surety bonds. ” (34 N. Y. Univ. L. Rev., 1439.)
In 1938, a new section was added to the State Finance Law (then numbered § 38-a, now § 137) entitled “ Bond to secure laborers and materialmen,” as follows:
“ In addition to other bond or bonds, if any, required by law for the completion of a work specified in a contract for the prosecution of a public improvement for the state of New York, or in the absence of any such requirement, the comptroller may nevertheless require prior to the approval of any such contract a bond guaranteeing prompt payment of moneys due to all persons supplying the contractor or a [emphasis supplied] subcontractor with labor and materials employed and used in carrying out the contract, which bond shall inure to the benefit of the persons supplying such labor and materials. In order to secure any rights and benefits conferred herein, laborers having claims for unpaid wages shall file and enforce a wage claim as provided by the labor law or shall file and enforce a mechanic’s lien pursuant to the provisions of the lien law, and a materialman, in order to secure any such rights and benefits, shall file and enforce a mechanic’s lien pursuant to the provisions of the lien law.” (L. 1938, ch. 707.)
The New York Law Revision Commission “ in 1945 * * * sought to clarify the rights of materialmen and laborers as beneficiaries under the contractor’s surety bond, [but] only a small part of its proposal was enacted; and a renewed proposal the following year also failed.” (40 Cornell L. Q., 709; see N. Y. Legis. Doc., 1945, No. 65 [L], 1945 Report of N. Y. Law Rev. Comm., pp. 433-472; L. 1945, ch. 380, amdg. State Finance Law, *1002 § 137; N. Y. Legis. Doc., 1946, No. 65[C], 1946 Report of N. Y. Law Rev. Comm., p. 79.)
In 1945, a new sentence was added to section 137 of the State Finance Law, viz: “ If, in an action to enforce a mechanic’s lien pursuant to the provisions of the lien law the court shall find that the laborer or materialman has a valid lien but that such lien cannot be satisfied because the moneys if any due from the state to the contractor are insufficient therefor, or, if the laborer or materialman furnished labor or material to a [emphasis supplied] subcontractor, because the moneys due to the [emphasis supplied] subcontractor are insufficient therefor, the laborer or materialman may nevertheless, if he is a beneficiary of a bond required by the comptroller, bring action to recover the amount of such lien from the obligors of the bond.” (L. 1945, ch. 480; see N. Y. Legis. Doc., 1945, No. 65[L].)
In 1964, the title of section 137 (Ibid.) was changed to “ Bond to secure payment of certain claims arising from a public improvement; enforcement” and many changes were made, including the deletion of the words ‘1 a subcontractor ’ ’ and addition of ‘‘ his subcontractors. ’’ (Emphasis supplied.) This 1964 amendment is not retroactive; it does not apply to this contract let in 1962 and to be completed December 31, 1963.
Where a bond is given pursuant to section 137 of the State Finance Law, it only covers labor and materials that can be protected by mechanics’ liens. (Hub Oil Co. v. Jodomar, 176 Misc. 320, 322 [Vast Vooehis, J.].) Liability on such a bond is not contingent upon the existence of a lienable fund, for the benefits granted to laborers and materialmen are guaranteed by the bond where there is no sufficient fund due the contractor or subcontractor on a State public improvement, against which the enforcement of valid and existing liens may lead to their payment. (Chittenden Lbr. Co. v. Silberblatt & Lasker, 288 N. Y. 396, 404.) Accordingly, section 137 supplements the Lien Law and Labor Law, granting to laborers and materialmen this added protection, including claims against the bond by lienors who have filed liens for the use of construction equipment supplied to a subcontractor in carrying out the contract. (Ibid.)
A materialman or laborer who provided material or labor for a public improvement at the request of a subcontractor are third-party creditor beneficiaries of the bond executed for their benefit by the general contractor, as principal, and an insurance company, as surety. (Triple Cities Constr. Co. v. Dan-Bar Contr. Co., 285 App. Div. 299, 304, affd. 309 N. Y. 665; Certified Ind. v. Royal Ind. Co., 43 Misc 2d 761, 762.) Although such materialmen and laborers must file and enforce their mechanics’ *1003 liens for their claims as conditions precedent to suit on the bond, both remedies may be enforced in one action. (Chittenden Lbr. Co. v. Silberblatt & Lasker, 288 N. Y. 396; Albany Steel & Iron Supply Co. v. Mechanical Installations, 13 Misc 2d 128, 129.)
Generally, no contractor of a public improvement contract may assign, transfer, convey or sublet it, or his rights therein or his power to execute it to anyone without the prior written consent of the department or official awarding it. (State Finance Law, § 138, L. 1909, ch. 58, § 43.)
Where, however, the State and general contractor, with full knowledge of all the facts, accept the benefit of work done and materials furnished by a subcontractor without objection, they may not avoid payment because they did not consent thereto. (Ocorr & Rugg Co. v. City of Little Falls, 77 App. Div. 592 [4th Dept.], affd. 178 N. Y. 622.) The prohibition is against assigning, subletting, etc., the whole or the substantial part of the public improvement contract, so that the original general contractor may not perform it; (ibid.) payment will be enforced when the State’s agent has knowledge that the subcontractor is doing the work or furnishing the materials, then the agent accepts them. (Barr & Creelman Co. v. State of New York, 265 App. Div. 893, 894.)
Since 1911 section 5 of the Lien Law entitled, “ Liens under contracts for public improvements, ’ ’ stated, in part: “ A person performing labor for or furnishing materials to a contractor, his [emphasis supplied] subcontractor or legal representative, for the construction of a public improvement pursuant to a contract by such contractor with the state or a municipal corporation, shall have a lien for the principal and interest of the value or agreed price of such labor or materials upon the moneys of the state or of such corporation applicable to the construction of such improvement, to the extent of the amount due or to become due on such contract ”. (L. 1911, ch. 873, § 1.)
“ The restriction in the statute to his, as distinguished from a, subcontractor, qualifies only those subcontractors who are no more remote from the contractor than persons performing labor for or furnishing materials to one who has contracted with the contractor.” (Wynkoop v. People, 1 A D 2d 620, 622, affd. 4 N Y 2d 892. See, also, Ciavarella v. People, 16 A D 2d 291, 293; Reynolds Metal Go. v. People, 41 Misc 2d 694, 696, affd. 23 A D 2d 970; Matter of Kayfield Constr. Corp. v. Glazed Block Corp., 46 Misc 2d 880, 881.)
Section 137 of the State Finance Law, added in 1938, is in pari materia with section 5 of the Lien Law, on the books since 1911.
*1004 “When enacting a statute the Legislature is presumed to act with deliberation and with knowledge of the existing statutes on the same subject, and earlier statutes are therefore properly considered as illuminating the intent of the Legislature in passing later acts, especially where there is doubt as to how the later act should be construed.” (McKinney’s Cons. Laws of UST. Y., Book 1, Statutes, § 222.) Thus, the words “ a subcontractor ” in section 137, when read with “ Ms subcontractor ” in section 5, are limited to the latter, especially when both became “ Ms ” in 1964 by amendment to section 137.
Here, Franjoine was Johnson’s subcontractor. The contracts between them contemplated work on the site which J ohnson was directed to perform under the prime contract. Franjoine’s work away from the site was actually done in performance of the prime contract to be paid as part of the unit contract price after Items 2 EF-B, 2 U F, 39 and 119A were either prepared, furnished, loaded, delivered, placed or spread on- the roadbed, as required by the plans and specifications. Franjoine was to be paid after the engineer measured the items in place.
Although Franjoine as a subcontractor was not approved in writing by the Superintendent, the State engineers and J ohnson had full knowledge .of the facts; they accepted the work and materials without objection.
Plaintiff and the appearing defendant lienors, as Franjoine’s materialmen, should be paid.
No trust funds are being held by Johnson and/or Franjoine that are lienable.
The following sister State rulings, though similar in part, are distinguishable from the instant case. Where a person bound itself not only to furnish gravel, but to “ deliver the sand piled along the roadside embankment ” at intervals of every 50 feet, this was not an undertaking to perform any part of the original contract with the contractor, but the delivery of gravel incidental to its sale; thus, the vendor of such gravel to that person was not made a subcontractor, but was only “ a furnisher of material to another furnisher of material ”. (Kearney & Sons v. Perry, 174 La. 411,415,419 [1932]; emphasis supplied.) A person, who contracts to. supply “ pit-run gravel from his gravel pit to designated spots or the job site at a specified price per yard ” is a “ furnisher of materials ’ ’ and not a ‘ ‘ subcontractor. ’ ’ (Brouillette v. Atlas Constr. Co., 151 So. 2d 582, 584 [La.]; emphasis supplied. See, also, Ann. 92 ALB. 2d 1253.) A person who quarries and delivers to the contractor “ at the side of the road being improved rock that conformed to the specifications of the state engineer ” is a materialman. and not a sub *1005 contractor. (Huddleston v. Nislar, 72 S. W. 2d 959, 961 [Tex.] ; emphasis supplied.) A person who supplies fill dirt and ‘ ‘ delivers it at the spot along the highway construction where the general contractor wished and ordered it dumped ’ ’ was not a subcontractor * * * but a materialman”. (Morris County Ind.
Park v. Nicol Co., 35 N. J. 522, 525, 534; emphasis supplied. See cases cited in accord.)
Judgment is granted:
For plaintiff against Johnson and Continental for $27,813.56, with interest from November 21,1962 ;
For Bonfiglio against Johnson and Continental for $10,473.60, with interest from January 1, 1963;
For Foti against Johnson and Continental for $2,349.40, with interest from January 1, 1963;
For Spina against Johnson and Continental for $8,625.75, with interest from December 3, 1962;
For Fago against Johnson and Continental for $8,800, with interest from January 15, 1963;
For C. F. H. Contracting against Johnson and Continental for $4,500, with interest from December 12, 1962;
For Caselinuovo against Johnson and Continental for $1,000, with interest from January 1, 1963;
Any money paid by the State to any of the judgment creditors herein shall be credited to the amounts due them pro tanto;
Dismissing all other causes of action, counterclaims and cross claims not above included.
Settle and submit judgment accordingly on two days’ notice or on stipulation of all appearing parties, with costs and disbursements.