[681 NYS2d 63]

WINDSOR METAL FABRICATIONS, LTD., Appellant, v GENERAL ACCIDENT INSURANCE COMPANY OF AMERICA, Respondent.

Second Department, November 23, 1998

**APPEARANCES OF COUNSEL**

*Sol Kodsi,* New York City, for appellant.

*Couch, White, Brenner, Howard & Feigenbaum, L. L. P.,* Albany (*Leslie F. Couch* of counsel), for respondent.

### OPINION OF THE COURT

.MILLER, J.

The plaintiff was a subcontractor on a public improvement contract for the construction of a health care facility at Greenhaven Correctional Facility. Eberhard Construction Company (hereinafter Eberhard) was the general contractor. Pursuant to the subcontract, the plaintiff was, *inter alia,* to provide and erect all structural steel for the project at a subcontract price of $404,000.

In accordance with the provisions of State Finance Law § 137, Eberhard was required to obtain a labor and material bond from a surety who would, among other things, guarantee payment to subcontractors in the event Eberhard failed to meet its contractual obligations. Eberhard did obtain a labor and material bond in the sum of $5,750,000 from the defendant, General Accident Insurance Company of America (hereinafter the surety).

The plaintiff commenced work on or about April 12, 1994. On March 28, 1995, the State of New York terminated its prime contract with Eberhard. The termination of the prime contract between the State and Eberhard also resulted in the termination of the subcontract with the plaintiff. On the termination date the State demanded that the contracted work be completed by the surety pursuant to the terms of its bond.

The plaintiff sent the surety a letter dated March 31, 1995, which it characterized as a "notice for payment", asserting that

it was currently owed $211,192 for work performed, subject to adjustment upon receipt of additional charges from its erector. Thereafter, on or about April 19, 1995, the plaintiff filed a mechanics' lien claiming to be owed $214,036.36. Eberhard and the surety subsequently posted a separate bond in the sum of $250,000 to discharge this lien.

At all pertinent times, Eberhard and the surety denied owing any additional compensation to the plaintiff. Indeed, Eberhard took the position that the plaintiff's failure to fulfill its subcontractual obligations was the reason that the State terminated the primary contract with Eberhard. Thus, as far as Eberhard and the surety were concerned, the plaintiff was entitled to no additional compensation.

As required by the relevant provisions of the subcontract, the plaintiff initiated arbitration proceedings against Eberhard on or about April 19, 1995. In August 1995 the plaintiff notified the surety of the arbitration since any award could "potentially effect [sic] the liability of [the surety] under its bonding agreement". It is uncontroverted that the surety's attorneys appeared at, and participated in, virtually all of the nine arbitration hearings held between September 1995 and January 1996. It is further uncontroverted that the surety's attorneys attempted to prove at the arbitration that the plaintiff had breached its subcontract and had been responsible for the surety's losses in being compelled to complete the project following Eberhard's termination. Nevertheless, by award dated April 2, 1996, and adhered to on April 26, 1996, the arbitrator awarded the plaintiff the principal sum of $231,678.20 payable by Eberhard. On December 3, 1996, the arbitration award was confirmed by the Supreme Court, Rockland County, and reduced to judgment against Eberhard. However, by this time Eberhard had apparently become insolvent. The plaintiff demanded payment from the surety but its demands were rejected.

The plaintiff thus commenced this action against the surety in or about January 1997. The surety's answer raised the Statute of Limitations as an affirmative defense. Contending that pursuant to State Finance Law § 137 (4) (b) an action on the bond had to be commenced within one year from the date that "final payment" became due, and asserting that final payment was due no later than March 1995 when the plaintiff sent its "notice for payment" to the surety, the surety argued that this action was untimely. Following motions for summary judgment, the Supreme Court agreed that the plaintiff's first cause of action on the bond was time barred. We now reverse.

State Finance Law § 137 requires the posting of a bond in connection with public improvement contracts, to protect the rights of, among others, subcontractors (*see, Davidson Pipe Supply Co. v Wyoming County Indus. Dev. Agency,* 85 NY2d 281). In the event that a general contractor defaults on its obligations, the subcontractor may look to the surety for payment on the bond (*see, Chittenden Lbr. Co. v Silberblatt & Lasker,* 288 NY 396; *Dutchess Quarry & Supply Co. v Firemen's Ins. Co.,* 190 AD2d 36). The purpose of the law is to provide greater protection to subcontractors, laborers, and material suppliers than exists under the Lien Law (*see, Chittenden Lbr. Co. v Silberblatt & Lasker, supra; Syracuse Supply Co. v Seaboard Sur. Co.,* 167 AD2d 830). Pursuant to State Finance Law § 137 (4) (b), an action against a surety on a bond must be commenced within "one year from the date on which final payment under the claimant's subcontract became due".

The Supreme Court incorrectly credited the surety's argument that final payment was due to the plaintiff as of March 1995 when the plaintiff sent its "notice for payment" to the surety. Certainly the plaintiff *claimed* an entitlement to receive payment, but both Eberhard and the surety rejected the plaintiff's claim. They blamed the plaintiff for the loss of the primary contract. It is highly disingenuous for the surety to contend that final payment was due in March 1995 now that it suits its needs for purposes of its Statute of Limitations argument, when both Eberhard and the surety previously and steadfastly denied that any payment obligation existed.

Pursuant to the unambiguous language of State Finance Law § 137 (4) (b), the Statute of Limitations is measured from the "date on which final payment *under the claimant's subcontract* became due" (emphasis supplied). Article 12 of the subcontract bears the heading "FINAL PAYMENT". Section 12.1 provides that the subcontractor will be entitled to final payment: (1) "when the Subcontractor's work is fully performed in accordance with the requirements of the Contract Documents", (2) "the Architect has issued a Certificate for Payment covering the Subcontractor's completed work", and (3) "the Contractor has received payment from the Owner". In the alternative, section 12.1 further provides that: "[i]f for any cause which is not the fault of the Subcontractor, a Certificate of Payment is not issued or the Contractor does not receive timely payment or does not pay the Subcontractor within three working days after receipt of payment from the Owner, final payment to the subcontractor shall be made upon demand".

Contrary to the surety's contentions, none of these provisions may reasonably be applied under the facts at bar. Eberhard contended that the plaintiff's work was not fully performed in accordance with contract requirements and there is no indication in the record that the architect ever authorized any final payment to the plaintiff (*see, Clyde-Savannah Cent. School Dist. v Naetzker, Thorsell & Dove,* 73 AD2d 810, 811). Moreover, under the alternative final payment provision, payment was due on demand if the subcontractor was not paid "for any cause which is not the fault of the Subcontractor". However, both Eberhard and the surety affirmatively charged that the plaintiff had breached its subcontractual obligations and thus its failure to be paid in accordance with the terms of the subcontract was indeed the subcontractor's fault. Clearly, as of March 1995, notwithstanding the plaintiff's demands, under the terms of the subcontract, until the issue was resolved via arbitration, final payment was not legally due; a genuine dispute existed as to the plaintiff's right to receive final payment.

Pursuant to article 6 of the subcontract, this dispute was submitted to arbitration. The plaintiff promptly initiated arbitration proceedings against Eberhard and these proceedings were conducted by the attorneys for the surety, ostensibly on Eberhard's behalf. While the surety apparently was technically not a "party" to the arbitration, it undeniably was the real party in interest. Indeed, although the record is far from clear, it appears that by this time Eberhard was out of business and the surety was involved in the arbitration specifically to avoid liability on its bond. In any event, Eberhard's objections were rejected by the arbitrator, who evidently concluded that the plaintiff was not responsible for the termination of the contract, and an arbitration award, later confirmed and reduced to judgment, was rendered in the plaintiff's favor. Pursuant to the express terms and dispute resolution mechanisms of the subcontract, the only logical conclusion is that it was only after the dispute over the plaintiff's right to receive final payment was resolved that final payment was actually due to the plaintiff.

The surety has failed to cite a single case on point standing for the proposition that final payment is due when a demand therefor is made, regardless of the fact that the claim is disputed and subject to arbitration or other dispute resolution mechanism. *Construction Pace Setters v United States Fid. & Guar. Co.* (225 AD2d 1090), upon which the Supreme Court

relied, is clearly inapposite, as there was no dispute therein over whether the plaintiff subcontractor was entitled to be paid. Rather, the instant case is analogous to *Sturdy Concrete Corp. v NAB Constr. Corp.* (65 AD2d 262), where the plaintiff subcontractor claimed entitlement to payment for certain extra work which the general contractor disputed. Pursuant to the provisions of the general contract, all such disputes were to be decided by the engineer. While the plaintiff claimed to be entitled to payment in accordance with other contract provisions which did not call for the approval of the engineer, the Court held that pursuant to the dispute resolution provisions of the contract, final payment was not due until the engineer determined that it was due. So, too, in this case the relevant contract provisions required that disputes over payments were to be decided by arbitration. Because Eberhard and the surety disputed the plaintiff's claims for payment, and actively opposed them in the arbitration, final payment was not determined to be due until the arbitration concluded in the plaintiff's favor. Therefore, the Statute of Limitations did not begin to run until that time. Since the plaintiff's action on the bond was commenced within far less than one year after the arbitrator's award, it was not time barred under State Finance Law § 137 (4) (b).

We have examined the surety's remaining contentions and find them to be without merit.

Therefore, we dismiss the appeal from the order dated November 5, 1997, as that order was superseded by the order dated April 3, 1998, made upon reargument, and the order dated April 3, 1998 is reversed insofar as reviewed, on the law, with costs, and upon reargument, the cross motion is denied, the branch of the plaintiff's motion which was for summary judgment on its first cause of action is granted, and the order dated November 5, 1997 is modified accordingly.

MANGANO, P. J., THOMPSON and LUCIANO, JJ., concur.

Ordered that the appeal from the order dated November 5, 1997 is dismissed, as that order was superseded by the order dated April 3, 1998, made upon reargument; and it is further,

Ordered that the order dated April 3, 1998 is reversed insofar as reviewed, on the law, and upon reargument, the cross motion is denied, the branch of the plaintiff's motion which was for summary judgment on its first cause of action is granted,

and the order dated November 5, 1997 is modified accordingly; and it is further,

Ordered that the appellant is awarded one bill of costs.