Argued May 3, reversed May 25, 1915.

# NORTHWEST STEEL CO. v. SCHOOL DIST. NO. 16.*

(148 Pac. 1134.)

**Schools and School Districts—Schoolhouses—Liability to Materialman.**

1. One furnishing material to a contractor, erecting a schoolhouse for a school district which had neglected to exact a bond required by Section 6266, L. O. L., of anyone contracting with any school district for the construction of any building, with the additional obligation that he will promptly pay all materialmen, had a right of action against the district for damages consequent upon the contractor's insolvency leaving a balance due for the materials furnished.

From Umatilla: Lawrence T. Harris, Judge.

In Banc. Statement by Mr. Justice Benson.

This is an action by the Northwest Steel Company, a private corporation, against School District No. 16 of Umatilla County, Oregon, a municipal corporation. The facts are as follows:

In January, 1912, the defendant school district entered into a contract with the Advance Construction Company for the erection of a schoolhouse, exacting from the said company a bond for the faithful performance of the terms and conditions of such contract, but failed to require any bond for the protection of materialmen and laborers in the collection of their claims. Plaintiff, a private corporation, furnished certain structual steel to be used in the erection of the building at the agreed price of $3,212. Certain payments were made by the contracting company upon the indebtedness thus incurred, but, while there was still

---

*As to personal liability of public officer for failure to take bond or for taking insufficient bond from contractor, conditioned for payment of claims of subcontractors, materialmen and laborers, see notes in 49 L. R. A. (N. S.) 1199.                    Reporter.

a balance of $810.70 due and unpaid thereon, the construction company became insolvent, and made an assignment for the benefit of its creditors, and is unable to pay this claim. Plaintiff sold and delivered the steel, not upon the credit of the construction company, but relying upon the presumption that the defendant would obey the mandate of Section 6266, L. O. L., which provides that:

"Any person or persons, firm or corporation, entering into a formal contract with the State of Oregon, or any municipality, county, or school district within said state for the construction of any buildings * * shall be required before commencing such work, to execute the usual penal bond with good and sufficient sureties, with the additional obligations that such contractor or contractors shall promptly make payments to all persons supplying him or them labor or materials for any prosecution of the work provided for in such contracts."

The above covers the substance of the allegations of the complaint, except as to certain details unnecessary to this discussion. The prayer of the complaint demands damages in the amount of plaintiff's upaid claim, with interest. A demurrer to the complaint was sustained, the action dismissed, with judgment in favor of defendant for its costs and disbursements, and plaintiff appeals.    REVERSED AND REMANDED.

For appellant there was a brief over the names of *Mr. A. R. Watzek, Messrs. Platt & Platt* and *Messrs. Raley & Raley,* with an oral argument by *Mr. Watzek.*

For respondent there was a brief over the name of *Messrs. Carter & Smythe,* with an oral argument by *Mr. Charles H. Carter.*

MR. JUSTICE BENSON delivered the opinion of the court.

There is but one question to be determined, and that is: Has the materialman, under the facts stated, a right of action against the school district for damages by reason of the negligence of the defendant in failing to exact a bond such as is required by Section 6266, L. O. L.? Defendant contends, and the trial court held, that the requirements of the statute create a public, and not a corporate or municipal, liability and therefore the defendant is not liable in damages for failure to comply therewith. There appear to be but few cases in which the question as applied to statutes similar to ours has been considered, and our attention has been called to the decisions of only three states, which are Michigan, Minnesota, and Kansas. Of these, the Michigan cases support the contention of plaintiff, while those of Minnesota and Kansas maintain an interpretation favorable to the defense.

We shall first consider the Michigan statute (Public Acts 1883, No. 94) and decisions. The title of the act reads:

"An act to insure payment of wages earned, and for materials used in constructing, repairing, or ornamenting public buildings and public works."

Section 1 is as follows:

"That when public buildings, or other public works, are about to be built, repaired, or ornamented under contract, at the expense of this state, or of any county, city, village, township or school district thereof, upon which buildings or works liens might attach for labor or materials if belonging to private persons, it shall be the duty of the board, officers or agents contracting on behalf of the state, county, city, village, township or school district, to require sufficient security, by bond, for the payment by the contractor, and all sub-

contractors for all labor performed or materials furnished in the erection, repairing, or ornamenting of such building.''

Then follow various provisions for making the act effective. The first reported case under this statute is that of *Owen* v. *Hill,* 67 Mich. 43 (34 N. W. 649), in which the trustees of a school district were made defendants in an action, similar to the one at bar, to recover damages sustained by the negligence of the defendants to exact the statutory bond. The court held that the act of requiring the bond is a ministerial act, involving no discretion, and consequently no judicial functions. The acts of fixing the amount in which the bond shall be given and of passing upon the sufficiency of the sureties are conceded to be, in a limited measure, judicial, but these acts were not the ones of which complaint was made. The opinion then discusses the question as to whether the requirements of the act constitute a public duty or a corporate one. Upon this point the court says:

''In this case the position was assumed by counsel for defendants that the duty imposed by the statute was a public duty, and the neglect to perform it only affected the public. If this were so, there would be no liability. But the contrary is, to my mind, the object and purpose of the law. The duty was imposed to protect individuals, and for the benefit of individual laborers and materialmen. That this is so is too plain for argument. No person can read the condition of the bond and not be satisfied that it was intended for the protection of the individuals who should furnish to the contractor or subcontractor either labor or material. Express provision of the law is that the bond shall be deposited for the use of any person interested therein, and that it may be prosecuted and recovery had by any person, etc., to whom any money shall be due and payable on account of having performed labor,

etc. The principle is this: 'That if the duty which the official authority imposes upon an officer is a duty to the public, a failure to perform it, or an inadequate or erroneous performance, must be a public, not an individual, injury, and must be redressed; if at all, in some form of public prosecution. On the other hand, if the duty is a duty to the individual, then a neglect to perform it or to perform it properly, is an individual wrong, and may support an individual action for damages': Cooley, Torts, 379. I am aware that it may be regarded as a great hardship to impose this liability upon persons who accept office and perform burdens gratuitously. But the law makes no exceptions, and I can make none. It is presumed that they know the law, and the further presumption is that they will obey it. If they do not, on whom should the loss properly fall; on those who neglect to perform a duty enjoined by law, or those whom the law was designed to protect from loss?''

The leading Minnesota case is that of *Ihk* v. *Duluth City,* 58 Minn. 182 (59 N. W. 960). This was an action for damages incurred through the city's neglect to exact a bond, under the provisions of the municipal charter which are stated, in the opinion, to be as follows:

''That, whenever the board of public works shall award a contract for making any of the improvements mentioned in the subchapter, the person to whom it is awarded shall furnish to the city a bond with sufficient sureties, to be approved by the board of public works, conditioned that he will execute the work for the price mentioned in the bid and according to the plans and specifications, and that he will pay for all labor done and material furnished for said improvement.''

The court holds that the city is not liable, for the reason that the duty to exact the bond is a public, and not a corporate, duty, and cites Dillon on Municipal

Corporations, Section 967, as the controlling test. In order to make clear the application, we quote the following from the opinion:

"The distinction between these two classes of duties, i. e., municipal or corporate duties, and public duties, and that for misfeasance or nonfeasance, that in the one case the municipality will be liable, and not in the other, is well established: 2 Dillon, Mun. Corp., §§ 966, 967. The difficulty usually lies in determining what are to be deemed municipal or corporate duties and what public duties. The test suggested by Dillon in Section 967, that to be a municipal duty it must relate to the local or special interests of the municipality, is the most reasonable and satisfactory test, and was applied by this court in *Bryant* v. *City of St. Paul*, 33 Minn. 289 (23 N. W. 220, 53 Am. St. Rep. 31). Tried by that test, the duty to take a bond for security of laborers and materialmen was a public, and not a corporate, duty; in other words, it was imposed on the particular officers, and not on the corporation as such. It did not relate to the local or special interests of the municipality nor of its citizens. It was a matter of indifference to the city that those claims were or were not secured. Such a bond, when taken, operates as security not merely for those who reside in the city, but equally for those who reside elsewhere—in Wisconsin, for instance."

The leading Kansas case is that of *Freeman* v. *City of Chanute*, 63 Kan. 573 (66 Pac. 647). This was a similar action based upon a statute (Gen. Stats. Kan. 1901, § 5130; 1 Code Civ. Proc., § 638e) which reads, in part, as follows:

"Whenever any public officer shall, under the laws of the state, enter into contract in any sum exceeding $100 with any person or persons, for purpose of making any public improvements, or constructing any public building, or making repairs on the same, such officer shall take from the party contracted with a bond with good and sufficient sureties to the state of Kansas, in

a sum not less than the sum total in the contract, conditioned that such contractor or contractors shall pay all indebtedness incurred for labor or material furnished in the construction of said public building or in making said public improvements."

The act further provides for filing such bond with the clerk of the district court, and contains other details for making the act effective. The court held that the city was not liable, for the reason that the duty imposed by the statute was a public, and not a corporate, one, expressly following the case of *Ihk* v. *Duluth,* 58 Minn. 182 (59 N. W. 960), calling special attention to the fact that the duty to exact the bond is imposed, not upon the corporation itself, but upon the officer. We have set out pretty fully the holdings of the courts of the states which have passed upon the question before us for the purpose of comparison. It is noteworthy that in all three of the cases the statute places the burden of requiring the bond upon particular officers, while the Oregon statute treats of the corporation as an entity. They all agree that the controlling problem is to determine whether the duty enjoined by law is a public or a corporate one. The Michigan court takes for its test the language of Judge COOLEY, which we reiterate:

"That if the duty which the official authority imposes upon an officer is a duty to the public, a failure to perform it, or an inadequate or erroneous performance, must be a public, not an individual, injury, and must be redressed, if at all, in some form of public prosecution. On the other hand, if the duty is a duty to the individual, then a neglect to perform it, or to perform it properly, is an individual wrong, and may support an individual action for damages": Cooley, Torts, 379.

The others adopt as decisive the rule as expressed in Dillon's Municipal Corporations (4 ed.), Section 967, from which we quote:

"Not only is the distinction just mentioned well established, but, as practically applied in the reported judgments of the courts, it has tended, in our judgment, to promote justice and to secure individual rights. This liability on the part of municipal corporations springs, as we think, from the particular nature of the duty enjoined, which must relate to the local or special interests of the municipality, and be imperative, and not discretionary, legislative or judical, and from the means given for its performance, which must be ample, or such as were considered to be so by the legislature, and not from the supposed circumstance that they received and accepted their charters or grants of powers and franchises upon an implied contract with the state that they would discharge their corporate duties, and that this contract inures to the benefit of every individual interested in the performance."

We are unable to see that this section supports the contention for which it is cited, and we think that the quotation from Cooley on Torts is the authority applicable to the case at bar. It must not be forgotten that these laws were enacted for the purpose of protecting laborers and materialmen in cases wherein the lien laws are ineffective. To entertain the theory of the Minnesota and Kansas courts would be to thwart the plain purpose of the statute by invoking a doctrine whose application thereto is far fetched. We therefore conclude that the trial court erred in sustaining the demurrer.

The judgment will be reversed, and the cause remanded for further proceedings not inconsistent with this opinion.          REVERSED AND REMANDED.

MR. JUSTICE HARRIS and MR. JUSTICE BEAN took no part in the consideration of this case.