188 So. 874

### ROBBINS v. CITY OF SHEFFIELD.

8 Div. 970.

Supreme Court of Alabama.

April 13, 1939.

Rehearing Denied May 25, 1939.

676

W. F. McDonnell, of Sheffield, for appellee.

R. L. Polk, of Sheffield, and J. E. Delony, Jr., of Tuscumbia, for appellant.

GARDNER, Justice.

The Universal Electric Construction Company entered into a contract with the city of Sheffield for the construction of an electric distribution system for said city. Plaintiff furnished the contractor, Universal Electric Construction Company, with labor, materials and supplies for and in the construction of the electric distribution system for the city, for which there is a balance due and unpaid.

The Act of February 8, 1935, General Acts 1935, page 70, provides in part as follows: "Section 1. Any person, firm or corporation entering into a contract with the State or any County or municipal corporation or sub-division thereof in this State for the repair, construction or prosecution of any public buildings or public work, highways or bridges, shall be required, before commencing such work, to execute a performance bond, with penalty equal to 50 percent of the amount of the contract

price, and in addition thereto, another bond with good and sufficient surety, payable to the State, County or municipal corporation or subdivision, letting the contract, in an amount not less than 50% of the contract price, with the obligation that such contractor or contractors shall promptly make payments to all persons supplying him or them with labor, materials, feed-stuffs or supplies for or in the prosecution of the work provided for in such contract, and for the payment of reasonable attorneys fees, incurred by successful claimants or plaintiffs in suits on said bond; and any person, firm or corporation that has furnished labor, materials, feed-stuffs or supplies for or in the prosecution or repair of any public building or public work, highways or bridges, and payment for which has not been made, shall be authorized to institute an action upon said bond in his or their name or names and to have their rights and claims adjudicated in such action and judgment rendered thereon; provided, however, that no suit shall be instituted on said bond until after forty-five days written notice to the surety thereon of the amount claimed to be due and of the nature of the claim."

The complaint here is against the city of Sheffield, and seeks recovery upon the theory that the city was negligent in failing to require the contractor to give the bond, provision for which is found in the above cited Act, for the protection of laborers and materialmen, which bond plaintiff presumed had been given, and in reliance upon such presumption furnished the labor and material to the contractor, for which a large balance remains unpaid. The city's demurrer to the complaint being sustained, plaintiff took a non-suit and appeals.

The Florida court in Phillips & Co. v. Board of Public Instruction for the County of Pasco, 98 Fla. 1, 122 So. 793, 64 A. L.R. 675, construed language of similar import as that involved in our Act as placing the initiative upon the contractor as to the execution of the required bond, and not upon the board to demand its execution. And the further holding was to the effect that as this related to a matter of public record, the one furnishing the labor and material might readily ascertain whether or not the bond had been given, and if he furnished such labor and material when bond has not been given, his negligence in doing so with knowledge of

such fact or without informing himself as to the true situation, is the cause of his loss and no recovery may be had against the public body. Such holding is likewise supported by other authorities. Woodward Lumber Co. v. Grantville, 13 Ga.App. 405, 79 S.E. 221; Blanchard v. Burns, 110 Ark. 515, 162 S.W. 63, 49 L.R.A.,N.S., 1199; Rock Island Lumber & Mfg. Co. v. Elliott, 59 Kan. 42, 51 P. 894; Electric Supply Co. v. City of Muskogee, 171 Okl. 130, 42 P. 2d 140; Pike County Board of Com'rs v. Norrington, 82 Ind. 190.

But leaving that theory to one side and undetermined, we prefer to base our conclusion upon what we consider a broader and more fundamental principle.

Counsel for plaintiff, with commendable candor, concede that the weight of authority supports the view that in the absence of a statute expressly creating a cause of action against it, the public body is not liable to laborers or materialmen for failure to require a public contractor to give a bond as provided by acts of the character above noted. Numerous authorities are found cited in the note to Phillips & Co. v. Board of Public Instruction, 64 A. L.R. pages 679 et seq. Varying reasons for non-liability have been assigned.

The minority view is illustrated by the decision of the Oregon court in Northwest Steel Co. v. School District, 76 Or. 321, 148 P. 1134, L.R.A.1915F, 629, Ann.Cas. 1917B, 1086, where opposing authorities are reviewed.

For the purpose of discussion, and for that purpose only, we assume that the contract here considered comes within the influence of the Act of 1935, and that, as plaintiff contends, the duty rested upon the city to demand of the contractor the statutory bond, and that the city was negligent in its failure to require its execution. Yet we think, upon fundamental principle, the city cannot be held in damages for this misfeasance. As stated by counsel the majority view in large part is rested on the theory that "the public body, (to use the language of the brief) or its officers representing it, were performing a public duty, or that the public body is an arm of the State government, and since the State cannot be held liable for the negligence of its agents in the performance of its duty, except by express statute, a subdivision of the State cannot be held liable, or that the public body cannot be held liable in dam-

ages for the acts of its agents." The cases supporting this view are to be found cited on page 680 of 64 A.L.R.

We consider this theory entirely sound and applicable to the instant case.

Counsel for plaintiff present an ingenious argument differentiating this case from the majority view upon the theory that the construction contract related to an electric distribution system which was a corporate or business enterprise, and that the city in engaging therein was not in the exercise of a governmental function, citing Town of Athens v. Miller, 190 Ala. 82, 66 So. 702; Montgomery v. City of Athens, 229 Ala. 149, 155 So. 551. Therefore, it is insisted, as the electric distribution system was a corporate enterprise, the reasoning of the authorities, to which reference is made, is without application.

Upon cursory consideration, the argument is most plausible. But we think a closer scrutiny discloses that it is untenable. Too much is assumed when it is said that because the contract related to the construction of an electric distribution system, it necessarily follows that the duty enjoined by the Act of 1935 as to the requirement of a bond partakes of the same character. If it be conceded for the purpose of discussion only, that the duty rested upon the city to require the bond, a like duty rested upon the State, the county or any subdivision of the State letting a contract for the construction of public works. It is clear enough no such action as the present one would lie against the State or county or any subdivision such as a school district, considered in Turk v. County Board of Education, 222 Ala. 177, 131 So. 436.

■ True, as to municipal corporations, there is some distinction (Montgomery v. City of Athens, supra), and while in a general sense their functions are of a public nature, yet they possess a dual character, exercising correspondingly two fold functions, two classes of powers, rights and duties. "In one of these dual capacities, considered as an agency of the state, the corporation exercises functions and powers, possesses rights, and has imposed upon it duties variously designated as public, legislative, political, or governmental, and acting in this capacity a municipality acts as a sovereignty. In the other of these dual capacities, not considered as an agency of the state, the municipal corporation exercises functions and powers, possesses rights, and has imposed upon it duties variously designated as private, quasi-private, proprietary, business, commercial, ministerial, or merely municipal; and acting in this capacity the municipality acts as a private or quasi-private corporation, enjoying powers and privileges conferred for its own benefit." 43 Corpus Juris 180.

■ Like thought is differently stated in 28 Cyc. 267, as follows: "The functions of municipal corporations, although all of a public nature, are properly divisible into two great classes, according to the double nature and purpose of the institution; namely (1) governmental, which are those conferred or imposed upon it as a local agency of limited and prescribed jurisdiction, to be employed in administering the affairs of the state, and promoting the public welfare generally; and (2) municipal, being those granted for the special benefit and advantage of the urban community embraced within the corporate boundaries." See, also, Boise Development Co. v. Boise City, 30 Idaho 675, 167 P. 1032.

■ Many cases illustrating the general principle of immunity of governmental agencies, particularly municipal corporations, from liability for the torts of its officers or agents, are found cited in Hillman v. City of Anniston, 214 Ala. 522, 108 So. 539, 46 A.L.R. 89, where are also noted those disclosing liability when in the exercise of corporate, as distinguished from governmental functions.

■ The distinction as to municipal corporations in the exercise of this governmental function and corporate or proprietary powers must be kept in mind. In its public character a municipal corporation is an agency of the State, exercising to the extent they have been granted the governmental functions and powers of the State.

■ "Governmental functions are those conferred or imposed upon the municipality as a local agency of limited and prescribed jurisdiction, to be employed in administering the affairs of the state, and promoting the public welfare generally. While in a certain sense any municipal function might be regarded as governmental, when properly applied, the term 'governmental functions' should be limited to legal duties imposed by the state upon its

creature, which it may not omit with impunity but must perform at its peril. * * * All functions of a municipal corporation, not governmental, are strictly municipal. Municipal functions are those granted for the specific benefit and advantage of the urban community embraced within the corporated boundaries. Logically all those are strictly municipal functions which specially and peculiarly promote the comfort, convenience, safety, and happiness of the citizens of the municipality, rather than the welfare of the general public." 43 Corpus Juris 182–183.

Mr. Dillon (Vol. 2. Dillon's Municipal Corporations, 4th ed. section 967) suggests a like test, that to be a municipal duty it must relate to the local or special interests of the municipality.

The question, therefore, here presented is this: Was the duty imposed by the Act of 1935 to require bond for protection of laborers and materialmen such as comes within the definition of a governmental function, or was it of a municipal, corporate or proprietary character merely because the contract related to public works which partake of that nature? In answering this question the nature of the duty and by what authority it is imposed is to be considered. And when so considered, we think it clear that it bore no relation to the character of public improvement to be undertaken.

If plaintiff's argument is to be followed to the end, it would result that as to the construction of a city hall or a fire station (by way of illustration) the duty would be governmental, a public duty, and no liability to be fastened on the municipality by reason of any negligence of its agents in regard thereto.

But if the improvement relates to the streets of the city or to the erection of an electric light system, an opposite conclusion is to be reached, and the rule of exemption from liability would not obtain.

Manifestly, the lawmaking body had no such distinction in mind. The duty is imposed upon the State, the counties and other subdivisions when no such liability would result, and there would be no occasion for a distinction against a municipality made to depend only upon the character of improvement to be undertaken. In short, the character of improvement bears no relation to the duty imposed.

The provision was one for laborers and materialmen generally, whatever character of improvement was under way or by whatever agency promoted. It was a duty for and in the interest of the public, and not of the municipality or its inhabitants.

The Supreme Court of Minnesota in Ihk v. City of Duluth, 58 Minn. 182, 59 N. W. 960, considering an analogous case, and applying the tests hereinabove noted, said: "The liability of the city depends on whether the duty imposed on the board to take the bond is, so far as concerns those who may furnish labor and material, a municipal or corporate duty, or is a duty imposed on the board, as an agency of the state, for the public or general (not corporate) benefit." And the holding was that the duty imposed was a public and not a corporate duty, and bore no relation to any local or special interest of the municipality nor its citizens.

The city was no more concerned than the State, counties or other subdivisions. The bond was to serve as security for any laborers or materialmen wherever they may be, and whether residents or non-residents of the State or city, or whether the public improvement was one touching governmental functions or relating only to municipal or corporate enterprise. It was for the public generally, and a public duty.

Conceding it was a positive requirement made of the city (a question we leave to one side and undetermined) it was a duty imposed by the State upon one of its agencies, the municipality, and the municipality in such cases was acting at the command of the State and as its representative in the matter. The duty was one imposed by law and not by contract. Olson Lumber Co. v. School District, 83 Colo. 272, 263 P. 723.

Being therefore an instrumentality of the State and exercising the authority given by the State, the city is no more liable for the acts or omissions of its officers or agents in this regard than would be the State. Turk v. County Board of Education, supra. It was, of consequence, a governmental function, and a negligent failure to perform the duty imposed, creates no more liability upon the city than upon the sovereignty which it represents. 43 Corpus Juris 180.

Other theories upon which the demurrer was due to be sustained are argued in brief.

But we have treated what we consider the fundamental question presented, which is decisive of the case and leave a consideration of these other insistences to one side.

The demurrer was properly sustained, and the judgment will accordingly be here affirmed.

Affirmed.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.