408 So.2d 1203 (1981)
MEDICAL CLINIC BOARD OF the CITY OF BIRMINGHAM-CRESTWOOD
v.
E. E. SMELLEY.
79-929.
Supreme Court of Alabama.
October 2, 1981.
*1204 William M. Acker, Jr., of Dominick, Fletcher, Yeilding, Acker, Wood & Lloyd, Birmingham, for appellant.
Thomas Reuben Bell and Thomas R. Bell, Jr., Sylacauga, for appellee.
ALMON, Justice.
This appeal arises from a suit by a subcontractor for damages relating to work he performed on a nursing home construction project. The trial court, sitting without a jury, awarded damages against the defendant general contractor for breach of contract and against the public agency defendant, which owned the property, for failure to require the general contractor to execute a statutorily mandated bond. The public agency, Medical Clinic Board of the City of Birmingham-Crestwood (Medical Clinic Board), appeals from the latter part of this judgment. We affirm.
Medical Clinic Board is a public agency incorporated under Code 1975, §§ 11-58-1 through -15; the stated purpose of this Code Chapter is "to provide for boards as public agencies and instrumentalities of the state of Alabama to promote the acquisition of health facilities in order to promote the public health of the people of Alabama." Id., § 11-58-2(a). On January 31, 1977, it entered into a contract with Garland Co., Inc. (Garland), for construction of a nursing wing addition to Fairhaven Methodist Home for the Aging (Methodist Home). Garland did not execute the bond required by Code 1975, § 39-1-1, in favor of persons supplying labor or materials for the construction.
E. E. Smelley contracted with Garland on June 27, 1978, to perform the drywall (sheetrock) installation in the nursing wing addition. Prior to signing this contract, Mr. Smelley negotiated terms with Doug Stegall, one of Garland's job superintendents. About ten days after he went to work on August 7, 1978, Mr. Smelley was told by Mr. Whatley, Garland's foreman on the site, that he would have to install sheetrock above the dropped eight-foot ceiling level. Considerable dispute arose over this aspect of the work, with Mr. Smelley contending that it was extra work and more difficult and costly than hanging sheetrock just to the eight-foot level, and Garland contending that the higher level was part of the contract signed by Mr. Smelley, which stated that work was to be performed "according to plans and specifications prepared by Thurston W. Sumner/Architect." On September 7 Mr. Smelley quit work on the project.
Mr. Smelley filed suit against Garland on May 8, 1979, seeking damages on open account, for work and labor done, and for breach of contract. On July 31, 1979, Mr. *1205 Smelley added Medical Clinic Board and Methodist Home as defendants in two counts added by the same amendment: one for wrongfully making final payment to Garland with notice of Smelley's claim against Garland (Count IV) and the other for negligently, in reckless disregard of § 39-1-1, failing to require Garland to furnish bond (Count V). Garland filed a counterclaim alleging breach of contract by Smelley; Medical Clinic Board and Methodist Home filed a cross-claim against Garland based on an indemnity agreement executed on March 28, 1979, by Garland's president, H. H. Garland, Jr.
After further pleadings and discovery the circuit court, sitting without a jury, tried the case on April 10 and 11, 1980. On May 20, 1980, the trial court entered the following findings and judgment:
The Court finds that it was the agreement of the parties that plaintiff E. E. Smelley do only the "eight foot" drywall work at 19 cents per square foot. Defendant Garland Company, Inc. breached the contract by attempting to require more from plaintiff. Plaintiff will be allowed the contract price on all such square footage. For extra work done by Plaintiff he will be reimbursed quantum meruit, since there was not an agreement to do that work, but it was rather done on a step-by-step basis. The Court determines a total amount due to be $18,000.00.
The Court further assesses attorney's fees, since these would have been due had the bond required by statute been obtained, and this amount is fixed at $2,000.00.
Judgment for plaintiff E. E. Smelley against defendant Garland Company, Inc., in the amount of $20,000.00.
Judgment for plaintiff E. E. Smelley against defendant The Medical Clinic Board of The City of Birmingham in the amount of $20,000.00.
Judgment in favor of cross-claimant The Medical Clinic Board of the City of Birmingham against cross-defendant Garland Company, Inc. in the amount of $17,270.58, which was the amount of money paid after the time of the signing of the hold harmless agreement.
Judgment in favor of defendant Fairhaven Methodist Home for the Aging.
Costs taxed against defendants Garland Company, Inc. and The Medical Clinic Board of the City of Birmingham.
The court amended the judgment in favor of Methodist Home ex mero motu to increase the cross-claim judgment by $2,000.00, and denied defendants' motion for new trial on July 23, 1980, and they filed this appeal on September 2, 1980. Garland later moved to dismiss its appeal, so Medical Clinic Board is the sole appellant.
Medical Clinic Board argues a number of issues on appeal alleging errors which we will group into the following categories:
(1) The breach of contract claim against Garland;
(2) The bond claim (Count V);
(3) The wrongful payment claim (Count IV);
(4) The award of attorneys' fees.

The Breach of Contract Claim
Mr. Smelley argues that Medical Clinic Board has no standing to raise these issues, basing this argument on such cases as Tullis v. Blue, 216 Ala. 577, 114 So. 185 (1927), and Otts v. Gray, 287 Ala. 685, 255 So.2d 26 (1971). These cases, however, hold merely that a judgment for or against a nonappealing party will not be affected by a successful appeal by another party. Medical Clinic Board is not seeking to have the judgment against Garland reversed; rather, it argues that any liability it has derives from Garland's liability to Mr. Smelley. That is, if Garland owed nothing to Mr. Smelley, then Mr. Smelley suffered no damage from either the final payment to Garland or the failure to require a bond. Because we find this reasoning persuasive, we will address these contract propositions raised by Medical Clinic Board: (a) the parol evidence rule precludes the introduction of evidence of antecedent oral understandings and negotiations for the purpose *1206 of varying or contradicting the terms of a written contract; (b) subsequent agreements to modify a contract must be supported by all the necessary elements of a contract such as mutual assent and consideration; and (c) a plaintiff who has breached his own contract may not sue the other party to the contract for that party's alleged breach of the same contract.
The statement above of the parol evidence rule begs the question of whether the writing is a complete and unambiguous statement of the agreement between the parties. If the writing is ambiguous, parol evidence is admissible to clarify the terms of the agreement; whether the writing is ambiguous is a question of law for the court. Universal Development Corp. v. Shader, 382 So.2d 1115 (Ala.1980); C. F. Halstead Contractor, Inc. v. Dirt, Inc., 294 Ala. 644, 320 So.2d 657 (1975). The ambiguity may be latent if the writing appears clear and unambiguous on its face, "but there is some collateral matter which makes the meaning uncertain; and parol or other extrinsic evidence is admissible to explain or clarify a latent ambiguity." Ford v. Ward, 272 Ala. 235, 130 So.2d 380 (1961); see also Gibson v. Anderson, 265 Ala. 553, 92 So.2d 692 (1956).
Medical Clinic Board argues that the provision that Mr. Smelley was to install the drywall "according to plans and specifications prepared by" the architect is unambiguous and that the contract was entire and complete. Mr. Smelley, however, testified that Mr. Stegall told him to disregard the plans because they were being changed: "[I]n the first plans ... it was supposed to be double half inch going all the way up to the roof, but they were getting a new set of drawings changing the plans and it would be five-eighths going up to eight foot high." Indeed, the plans furnished to Mr. Smelley by the architect in February of 1979 show double thickness sheetrock, and there was no contention at trial that such double thickness was installed or required.
Therefore Mr. Smelley's testimony as to the height to which he agreed to install the sheetrock was admissible and, concomitantly, so was his testimony as to his extra expense for installing it to the higher level. Because the trial court was within its province in accepting Mr. Smelley's testimony as to the original agreement, we hold that the second issue argued by Medical Clinic Board, subsequent modification, is not pertinent.
Similarly, the argument that Mr. Smelley could not recover because he also breached is inapplicable. Mr. Smelley testified that about a week before he left the job he asked Mr. Whatley for payment on some of the work he had done and was told that the only way he would be paid would be to finish the work or to sue. Furthermore, the argument fails because of the doctrine of substantial performance: Mr. Smelley testified that when he quit, approximately 90% of the work had been finishedincluding the extra work above the eight-foot level. Where one party has substantially performed his part of the agreement, he can enforce the other party's promise to pay. Bruner v. Hines, 295 Ala. 111, 324 So.2d 265 (1975).
Medical Clinic Board points to a provision in the contract requiring extra work to be approved in writing before commencement and argues that this bars at least part of Mr. Smelley's recovery. This work was not volunteered by Mr. Smelley, however; Mr. Whatley insisted upon it and apparently gave Mr. Smelley assurances that he would be paid. We shall not, under the circumstances, invoke this clause to disturb the judgment of the trial court.

The Bond Claim
Having established that the underlying claim against Garland had merit, we now proceed to consider the issues relating directly to this appeal. The issues subsumed under the bond claim are: (a) Does a public owner have a duty under Code 1975, § 39-1-1, to require a bond from the general contractor inuring to the benefit of subcontractors? (b) If so, when does the statute of limitations begin to run against a party seeking to file suit based on this *1207 duty? (c) Would a holding in favor of Mr. Smelley in this case be retroactive so as to constitute an impairment of the obligation of a contract entered into in reliance on a prior interpretation of the law? (d) Does Mr. Smelley's failure to inquire whether Garland had filed a bond amount to contributory negligence?
The duty question turns on the language of the statute and on the decisions in Robbins v. City of Sheffield, 237 Ala. 674, 188 So. 874 (1939), Jackson v. City of Florence, 294 Ala. 592, 320 So.2d 68 (1975), and Housing Authority of Prattville v. Headley, 360 So.2d 1025 (Ala.Civ.App.1978). In Robbins this Court held that the municipality was "not liable to laborers or materialmen for failure to require a public contractor to give a bond" as provided by the precursor of § 39-1-1. 237 Ala. at 677, 188 So. 874. This decision was based on the doctrine of sovereign immunity, which was overruled in Jackson v. City of Florence, supra. The Court of Civil Appeals in Housing Authority of Prattville, supra, held a municipal housing authority subject to suit by a subcontractor in spite of the holding in Robbins because "the statute which authorizes the creation of housing authorities in this state expressly allows such authorities to sue and be sued." 360 So.2d at 1027. The court expressly noted that the proceedings in that case were initiated prior to the decision in Jackson, supra.
Under the rationale of either Jackson or Housing Authority of Prattville the duty and liability imposed here should be allowed to stand. These events and proceedings took place subsequent to Jackson and so the removal of the rationale of Robbins made the duty and potential liability imposed by § 39-1-1 upon public agencies at best an open question; furthermore, § 11-58-5(2) gives medical clinic boards the power "[t]o sue and be sued and prosecute and defend civil actions in any court having jurisdiction of the subject matter and of the parties." We find no error in the trial court's imposition of liability for failure to require a bond.
Medical Clinic Board argues that Mr. Smelley's claim is barred by the one-year statute of limitations found in Code 1975, § 6-2-39, because its duty to require a bond arose when it entered into its contract with Garland in January of 1977, and that its duty to Mr. Smelley arose on June 27, 1978, when he contracted with Garland. It argues that the amendment which added Medical Clinic Board as a party on July 31, 1979, was beyond the period of the statute. Mr. Smelley counters that his cause of action arose when Medical Clinic Board authorized final payment to Garland on March 27, 1979. We agree. Not only does § 39-1-1 expressly state that an action on a bond "shall be commenced not later than one year from the date of final settlement of said contract," but also, Mr. Smelley had no cause of action prior to this time because he had suffered no injury arising from Medical Clinic Board's breach of duty. The Court of Civil Appeals made a similar ruling in Headley v. Housing Authority of Prattville, 347 So.2d 532 (Ala.Civ.App.1977), an earlier appeal of Housing Authority of Prattville, supra.
Medical Clinic Board's argument that an affirmance would constitute an impairment of an obligation of contract is premised upon a belief that affirmance would rest on Housing Authority of Prattville, supra, which was decided after the contracts here were executed. Because we hold that the trial court's judgment is equally supported by Jackson, supra, we find no merit in this contention. Furthermore, Medical Clinic Board does not argue here that it defended the suit on the basis that it failed to require a bond in reliance upon the denial of liability in Robbins, supra, and so it will not be heard to argue such reliance here.
Dicta in Robbins, supra, indicates approval of a Florida holding
to the effect that as this related to a matter of public record, the one furnishing the labor and material might readily ascertain whether or not the bond had been given, and if he furnished such labor and materials when bond has not been given, his negligence in doing so with knowledge of such fact or without informing *1208 himself as to the true situation, is the cause of his loss and no recovery may be had against the public body.
Robbins v. City of Sheffield, supra, 237 Ala. at 677, 188 So. 874.
Our statute, however, makes no mention of filing the bond as a public record. Although it does require that a subcontractor shall be "furnished a certified copy of said additional bond and contract," Code 1975, § 39-1-1(b), this applies only after payment has been denied, not before the subcontractor enters into the contract. Id. Therefore no statutory duty to inquire is imposed, and the subcontractor is entitled to take the contractor's solicitation of his labor or materials as an assurance that the statutorily required bond has been executed.[1]

The Wrongful Settlement Claim
Because we have held that the judgment may stand under the bond claim, we pretermit discussion of this issue.

The Award of Attorneys' Fees
Although this action sounds in tort and not upon a bond, we find that the statutory award of attorneys' fees (§ 39-1-1) is part and parcel of the statutory imposition of duty; therefore, the trial court's decision to award attorneys' fees will be allowed to stand.
The trial court is due to be and is hereby affirmed.
AFFIRMED.
FAULKNER, EMBRY, BEATTY and ADAMS, JJ., concur.
NOTES
[1] The attorney for appellant filed a motion asking this Court to allow an untimely rehearing. The motion seeks a ruling that Medical Clinic Board is not a "subdivision" within the meaning of Code 1975, § 39-1-1. This motion was denied because that issue was not timely presented. Indeed, a contrary assumption was indulged at trial and on appeal. This footnote is added to make clear that this issue was not before the Court and, consequently, was not decided.