OPINION OF THE COURT
Vincent E. Doyle, J.
Motion is brought by plaintiff, Davidson Pipe Supply Co., Inc. (Davidson), for an order for partial summary judgment pursuant to CPLR 3212 and for a declaration pursuant to CPLR 3001 that:
Davidson has a private right of action for damages against defendants Wyoming County Industrial Development Agency (WCIDA), "John Doe 1, 2 and 3” (officials of WCIDA) and Indeck Energy Services of Silver Springs, Inc. (Indeck), as agent for WCIDA, for their failure, pursuant to State Finance Law § 137 (1) (the Bond Statute), to furnish a bond guaranteeing payment of monies due to all persons, including Davidson, furnishing labor or materials to WCIDA’s contractor or subcontractor.
Cross motion is brought by Indeck for an order dismissing the complaint on grounds that a labor and material payment bond was not required for this construction project or, alternatively, if such a bond was required, Davidson lacks standing, failed to timely file a claim and commence a lawsuit and is too remote under the Bond Statute to file a claim against a labor and material bond.
The uncontested facts in this case reveal the following:
Defendant WCIDA is a public benefit corporation organized under General Municipal Law § 856 (2) and § 901-b. A function of WCIDA is to make private financing available to private developers at tax exempt interest rates through the sale of industrial development revenue bonds. Defendant In-deck, a developer of an energy cogeneration plant in Silver Springs, New York, that produces steam and electrical energy which is then sold to manufacturers and utilities (the project), entered into a credit agreement with the Bank of New York (Bank) by which Indeck obtained a loan from the Bank for construction of the aforesaid project. Simultaneously, Indeck and the IDA executed an installment sale agreement which provides for the transfer of title from Indeck to IDA at the *991 beginning of construction of the project and the transfer of title from the IDA back to Indeck at the termination of the installment sale agreement, which occurs when Indeck pays its indebtedness in full to the Bank and the payment by Indeck of annual installments of $1 to the IDA.
Indeck engaged National Energy Production Corporation (NEPCO) as its general contractor to construct the project which then engaged Eels Co., Inc. (Eels) to perform certain steel-related work in connection with the construction of the project. Eels then contracted with Davidson which, between October 4 and November 13, 1990, delivered steel pipe and related materials to Eels for incorporation into the plant for an agreed price of $136,639.32, which funds have not been paid to Davidson.
Davidson filed both "private” and "public” improvement liens. Subsequently, NEPCO executed bonds in connection with the private lien and the public improvement lien.
On September 23, 1991, Davidson commenced the instant action claiming, inter alia, that Indeck failed to provide a payment and material bond pursuant to the Bond Statute requirement for payment and material bonds on public improvements.
In the typical transaction, such as that presented in the instant case, the developer, Indeck, conveys its fee interest in realty to the industrial development agency, WCIDA, which then leases the premises back to the developer. The rent paid by the developer to the IDA pursuant to the leaseback agreement is more or less equal to the principal and interest due on the monies raised by the sale of the industrial development revenue bonds, the proceeds of which were expended to both acquire and improve the property. Upon satisfaction of the rental obligation, the fee interest in the premises is conveyed back to the developer.
Defendants contend that WCIDA’s acquisition as record owner of the parcel of land located in Silver Springs, Wyoming County, New York, the construction of the cogeneration plant, and WCIDA’s financing of part of the costs of the plant were entirely for private purposes and did not constitute a "public improvement” for purposes of the Bond Statute. Further, defendants contend that because the project was not then a public improvement, neither WCIDA nor Indeck were responsible for providing a bond guaranteeing the payment of materialmen and laborers pursuant to section 137 of the State Finance Law.
*992 Plaintiff Davidson argues that:
1. Summary judgment is appropriate where the sole question is one of statutory construction and no material and triable issue of fact is presented;
2. The Bond Statute was enacted for the benefit of material-men and laborers who provide goods and services in the execution of a public project;
3. "Public work” must be distinguished from "public improvement;”
4. Davidson has standing to seek relief under section 137 of the New York State Finance Law; and
5. Davidson has a private remedy under the Bond Statute for failure to provide a payment bond.
Section 137 of the State Finance Law provides in relevant part as follows: "In addition to other bond or bonds, if any, required by law for the completion of a work specified in a contract for the prosecution of a public improvement for the state of New York a municipal corporation, a public benefit corporation or a commission appointed pursuant to law, or in the absence of any such requirement, the comptroller may or the other appropriate official, respectively, shall nevertheless require prior to the approval of any such contract a bond guaranteeing prompt payment of moneys due all persons furnishing labor or materials to the contractor or his subcontractor in the prosecution of the work provided for in such contract” (emphasis added).
This court finds that WCIDA is a public benefit corporation (see, General Municipal Law §2) and is a public corporation under Lien Law § 2 (6). The legislative purpose of such agencies is expressly declared to be to advance the general prosperity and economic welfare of the people of New York through the improvement of industrial facilities (see, General Municipal Law § 858). WCIDA is expressly granted the power to acquire realty (General Municipal Law § 858) which in fact WCIDA has done in this case. A "public improvement” means an improvement of any real property "belonging to the state or a public corporation” (Lien Law § 2 [7]). The courts of this State have consistently held that property owned and developed by an agency is a public improvement, notwithstanding that the property may be the subject of a sale/leaseback agreement or, as here, where the agency-owned property is the subject of an executory sale agreement (see, Lincoln First Bank v Spaulding Bakeries, 117 Misc 2d 892; Albany County *993 Indus. Dev. Agency v Gastinger Ries Walker Architects, 144 AD2d 891, appeal dismissed 73 NY2d 1010, lv denied 74 NY2d 605 [1989]).
Section 137 of the State Finance Law requires WCIDA, the members of Indeck as WCIDA’s agent, to require a payment bond before entering into any contract for a public improvement. The purpose of section 137 of the State Finance Law is to protect laborers and materialmen who, as here, provide goods and services in connection with the prosecution of a public improvement (see, Chittenden Lbr. Co. v Silberblatt & Lasker, 288 NY 396).
As set forth in the Bond Statute, the public policy of the State is "to protect the persons for whose benefit it was enacted, against nonpayment for labor and material furnished in the execution of a public project * * * In other words, the State has declared its policy to be that persons furnishing labor and materials * * * shall be paid” (see, State Bank v Dan-Bar Contr. Co., 23 Misc 2d 487, 491, affd 12 NY2d 804).
However, a review of the Bond Statute reveals that there is no express private remedy when its requirements to provide a bond are ignored. Absent explicit legislative direction, it is for the courts to determine whether a private cause of action is implied in the statute (Merrill Lynch, Pierce, Fenner & Smith v Curran, 456 US 353). The first two inquiries in determining legislative intent to create a private right of action are whether the statute was enacted to benefit a certain class and whether plaintiff is "one of the class for whose especial benefit the statute was enacted” (Motyka v City of Amsterdam, 15 NY2d 134). The court will then examine indications in the legislative history of an intent to create or deny such a remedy and the consistency of doing so with the purposes underlying the legislative scheme (Burns Jackson Miller Summit & Spitzer v Lindner, 59 NY2d 314).
The Bond Statute was enacted after the filing of the Report of the Joint Legislative Committee on State Fiscal Policies (1938) which found a lack of protection for those who furnish labor and materials to contractors performing work on public improvements. The enactment of the Bond Statute was intended "to afford additional assurance of payment to laborers and to materialmen” (see, Chittenden Lbr. Co. v Silberblatt & Lasker, supra, at 405).
Prior to 1985, the scope of the Bond Statute was limited to public improvements prosecuted by the State of New York *994 and the State Comptroller had discretion to require a payment bond prior to the approval of the contract. In 1985 (L 1985, ch 137, § 10), the Bond Statute was expanded by the Legislature to include public improvements prosecuted by entities other than the State and made the payment bond requirement mandatory in the case of municipal corporations and public benefit corporations, guaranteeing prompt payment of monies due to all persons furnishing labor or materials to work provided for in the contract. The guarantee of payment afforded by the bond where there is no fund or an insufficient fund due to the contractor, as here, against which the enforcement of valid and existing liens may have to the payment thereof were benefits granted to laborers and materialmen which were not afforded them before the amendment of 1985 (see, Syracuse Supply Co. v Seaboard Sur. Co., 167 AD2d 830 [4th Dept 1990]; Chittenden Lbr. Co. v Silberblatt & Lasker, supra, at 404).
Without the protection of the Bond Statute, its intended beneficiaries do not get paid whenever funds remaining on a public improvement contract have been dissipated prior to being paid to those entitled thereto, as here, the plaintiff who furnished materials to the agency’s contractor in the prosecution of the contract.
While this particular issue urged by Davidson in the instant case has not been previously considered in New York, other jurisdictions, public entities and public officers who have executed contracts for public improvements have been found liable to subcontractors, laborers and materialmen for their failure to require a statutory payment bond, even though the statute, as here, does not expressly impose liability on the public entity.
In Northwest Steel Co. v School Dist. No. 16 (76 Ore 321, 148 P 1134 [1915]), the Oregon Supreme Court held that a materialman could recover after the insolvency of the contractor from a school district which had failed to require a statutorily mandated payment bond, similar in nature and affect as the New York Bond Statute. However, both Minnesota and Kansas have found no private right of action when a statutorily mandated bond was not provided (see, Ink v City of Duluth, 58 Minn 182, 59 NW 960 [1894]; Freeman v City of Chanute, 63 Kan 573, 66 P 647 [1901]). In rejecting the contrary precedents of Minnesota and Kansas, the Northwest Steel court stated: "It must not be forgotten that these laws were enacted for the purpose of protecting laborers and materialmen in cases *995 wherein the lien laws are ineffective. To entertain the theory of the Minnesota and Kansas courts would be to thwart the plain purpose of the statute by invoking a doctrine whose application thereto is farfetched” (Northwest Steel Co. v School Dist. No. 16, supra, 76 Ore, at 328,148 P, at 1136).
Similarly, in Medical Clinic Bd. v Smelley (408 So 2d 1203 [Ala 1981]), where the public agency failed to require its general contractors to execute a statutorily mandated payment bond, a subcontractor was awarded damages against a public agency. The court rejected the agency’s defense that the subcontractor was contributorily negligent in failing to inquire whether the bond had been posted, stating: "the subcontractor is entitled to take the contractor’s solicitation of his labor or materials as assurance that the statutorily required bond has been executed” (Medical Clinic Bd. v Smelley, supra, at 1208).
Likewise, the Michigan Supreme Court authorizes a private action by a party injured against public officers or the municipal body for their failure to require a statutorily mandated bond for the benefit of all labor performed and materials furnished for the work or improvements being performed in the work provided by the contract (see, City of Alpiena v Title Guar. & Sur. Co., 158 Mich 678,123 NW 536 [1909]).
In the recent case decided by the Georgia Court of Appeals (City of Atlanta v United Elec. Co., 202 Ga App 239, 414 SE2d 251 [1991]), the City of Atlanta has been held liable to an unpaid subcontractor for failing to require a payment bond from a general contractor, as provided by statute.
Based upon the foregoing, this court determines the project in the instant case contemplates a public works improvement. As the defendants in the instant case failed to require a labor and material bond in accordance with the Bond Statute, Davidson has a direct right of action against them to recover for any resulting loss. Also, where there are no triable issues of fact, as here, summary judgment is appropriate (see, Zuckerman v City of New York, 49 NY2d 557).
Defendant Indeck’s reliance on Matter of Erie County Indus. Dev. Agency v Roberts (94 AD2d 532, affd 63 NY2d 810) is misplaced. That case merely held that the industrial development agency projects therein at issue were "public works” so as to trigger or invoke the prevailing wage requirement of section 220 of the Labor Law. Moreover, to accept the Roberts rationale and definition of "public work” in limiting the *996 application of the Bond Statute would deny the legislative history, judicial interpretation and the remedial relief (previously discussed herein) the Legislature intended to provide by enacting the amendment to the Bond Statute in 1985.
Further, this court rejects Indeck’s argument that the project is largely a private one conceived by Indeck for the benefit of Indeck’s shareholders and is therefore not a public improvement. Indeck admits that in order to make the project economically viable, it was necessary for WCIDA to take record ownership of the property permitted by (the Enabling Statute) article 18-A of the General Municipal Law. Also, Indeck admits "that the Project would be economically feasible only if it could receive the benefits,” such as an exemption from mortgage recording tax and negotiation of the payment in lieu of taxes agreement, only available in connection with an industrial development agency project. Indeck also asserts that WCIDA serves only as a conduit for tax benefits.
The Enabling Statute’s purpose is not limited (as argued here by Indeck) to providing tax benefits to a private corporation such as Indeck and to protect the property owned by such corporation from the liens of materialmen and laborers by transferring title to an industrial development agency as its nominee. Rather, the industrial development agencies were created "for the purpose of preventing unemployment and economic deterioration * * * The use of all such rights and powers [granted to an agency] is a public purpose essential to the public interest” (General Municipal Law § 852).
Here, in fact, the installment sale agreement to which WCIDA and Indeck are parties incorporates the purposes intended by the Enabling Statute.
Confirming the purposes of the Enabling Statute, the court in Lincoln First Bank v Spaulding Bakeries (117 Misc 2d 892, 898, supra) noted that: "to ignore the ownership interests of the industrial development agency, as slight as they may be in light of the inundation of private, equitable interests in this realty, would effect the salutary purposes of the New York State Industrial Development Agency Act (General Municipal Law, art 18-A).”
The installment sale agreement, contrary to Indeck’s assertion that it was not the agent of WCIDA in the typical principal/agency relationship because WCIDA had nothing at stake in the venture, is contradicted by the very terms of the installment sale agreement which provides, in substance, that *997 WCIDA appoints Indeck as its irrevocable agent with complete authority to conduct the matters in connection with the project, that Indeck agreed to construct the project on behalf of WCIDA, that although WCIDA agreed to accept assignments of contracts by Indeck, WCIDA’s liability was limited to the monies disbursed under the credit agreement, that said authority specifically terminated upon default by Indeck, at which time WCIDA or the Bank could take possession of and operate the project. WCIDA was more than a nominal participant in the project and it was its participation in the project which permits WCIDA to achieve its statutory purpose of improving the local economy. Thus, the project is a "public improvement” under the Bond Statute and WCIDA and In-deck, as agent, are liable to Davidson for damages arising out of their failure to request a payment bond for Davidson’s benefit.
As to the issue of Davidson’s standing to seek relief under the Bond Statute, the New York Court of Appeals has held that: "where the Legislature has enacted a statute which envisages the enforcement of rights thereunder but does not explicitly set forth who shall have standing to maintain enforcement proceedings, that a party [Davidson] suffering injury in fact and arguably falling within the zone of interest to be protected by the statute has standing to sue” (see, Matter of Fritz v Huntington Hosp., 39 NY2d 339, 346).
Standing to sue will be denied only when there is a clear legislative intent to negate review or, in fact, a lack of injury (see, Matter of Dairylea Coop. v Walkley, 38 NY2d 6 [where a milk distributor had standing to challenge the licensing of a competitor]). Standing to sue means a particular plaintiff is involved in a particular controversy, is a real party in interest and has a judicable interest in the controversy.
Moreover, New York’s laws governing statutory construction and interpretation provide as follows:
"A construction which would render a statute ineffective must be avoided, and as between two constructions of an act, one of which renders it practically nugatory and the other enables the evident purposes of the Legislature to be effectuated, the latter is preferred * * *
"Similarly, where a statute contains provisions all of which cannot be effectuated, it will be given a construction which will, as nearly as possible, preserve the purpose for which it was enacted. The Legislature does not contemplate the leaving *998 of a party without a remedy, and a construction of a statute which would have such an effect is to be avoided” (McKinney’s Cons Laws of NY, Book 1, Statutes § 144).
Further, this court finds that Davidson provided proper notice as required by the Bond Statute by mailing a notice of mechanic’s lien, public improvement, on February 8, 1991 to WCIDA, Indeck and NEPCO, Fels and the attorneys for WCIDA and the Bank by certified mail containing the date on which the last materials were delivered to the project, the amount claimed and the name of the party to whom the material was furnished. Although section 137 (3) of the State Finance Law requires the notice to be given by registered mail rather than certified mail, the acknowledged returned receipt cards by WCIDA, Indeck, NEPCO, Fels, the attorneys and the Bank evidence that the notice was received and is therefore sufficient. Here, Davidson delivered the last materials to the project on November 13, 1990 and the notice was mailed on February 11, 1991, within the statutory notice period.
Also, this court finds that Davidson is not too remote to file a bond claim under the Bond Statute, contrary to the assertion of Indeck who refers to Indeck as the contractor for WCIDA as owner. Indeck is a contract vendee of the project pursuant to the terms of the installment sale agreement which defines "general contractor” as National Energy Production Corporation.
Finally, this court finds that although neither subdivision (1) nor subdivision 5 (b) of section 137 of the State Finance Law includes sub-subsubcontractors, the term "subcontractor” includes sub-subcontractors as well as a number of direct subcontractors immediately under a subcontractor. Finally, this court finds it was reasonable for Davidson to assume that WCIDA and Indeck complied with the law and provided a payment bond guaranteeing payment to laborers and materialmen supplying labor and materials to the work in progress —without prior inquiry by Davidson as to the existence of a payment bond or the commencement of an article 78 proceeding to compel posting of a bond. Rather, WCIDA or Indeck, as its agent, in conformity with this statutory obligation under the Bond Statute, should have required the payment bond for the benefit of Davidson.
*999 For all of the reasons stated above, plaintiff’s motion for partial summary judgment is granted while Indeck’s cross motion to dismiss is denied. Proof of plaintiff’s damages shall be scheduled at some date and time convenient to this court and to the parties herein involved.