240

[609 NYS2d 982]

Davidson Pipe Supply Co., Inc., Respondent, v Wyoming County Industrial Development Agency et al., Appellants.

Fourth Department, March 11, 1994

APPEARANCES OF COUNSEL

*Saperston & Day, P. C.,* Buffalo *(Robert Michalak* of counsel), for Indeck Energy Resources of Silver Springs, Inc., appellant.

*Dadd & Nelson, P. C.,* Attica *(Eric Dadd* of counsel), for Wyoming County Industrial Development Agency and others, appellants.

*Jones, Hirsch, Connors & Bull,* New York City *(William Sterns, III,* of counsel), and *Barry L. Radlin,* Amherst, for respondent.

**OPINION OF THE COURT**

FALLON, J.

Supreme Court erred in granting plaintiff's motion for a judgment declaring that defendants are liable to plaintiff for their failure to require a payment bond pursuant to State Finance Law § 137 and in granting plaintiff partial summary judgment on liability *(Davidson Pipe Supply Co. v Wyoming County Indus. Dev. Agency,* 156 Misc 2d 989).

Pursuant to the authority conferred by article 18-A of the General Municipal Law, defendant Wyoming County Industrial Development Agency (WCIDA) entered into an installment sale agreement with defendant Indeck Energy Resources of Silver Springs, Inc. (Indeck) to develop and construct an energy cogeneration plant in Silver Springs, New York (the Project). Contemporaneously, WCIDA and Indeck executed a credit agreement with the Bank of New England, N.A., with Indeck as the borrower. The major provisions of the installment sale agreement provided that Indeck would convey to WCIDA title to the real property, that WCIDA would join in the credit agreement to assist Indeck in obtaining funds, that Indeck would assume the task of constructing the cogeneration plant, and that WCIDA would convey the Project to

Indeck upon, *inter alia,* satisfaction of Indeck's obligations under the credit agreement. The ultimate purpose of the Project was for Indeck to sell steam and electricity to private companies. Pursuant to the installment sale agreement and the credit agreement, all risks and benefits associated with the Project flow to Indeck. The arrangement between WCIDA and Indeck is typical of arrangements used by industrial development agencies as a method of providing incentives and assistance to private developers in carrying out projects within the agency's domain.

Indeck engaged National Energy Production Corporation (NEPCO) as the general contractor for the Project. NEPCO engaged Fels Co., Inc. (Fels) as a subcontractor to perform certain steel-related work. Fels contracted with plaintiff, Davidson Pipe Supply Co., Inc. (Davidson), which, in October and November of 1990, delivered materials to Fels at the site of the Project. Those materials were priced at $136,639.32; Fels has defaulted on its debt to Davidson. The limited remedies under the Lien Law were apparently inadequate to make Davidson whole,* and it commenced this lawsuit seeking money damages from defendants. The individual defendants are the members of WCIDA.

In its complaint, Davidson alleged that it was damaged by defendants' failure to comply with State Finance Law § 137 (1), which compels certain governmental entities to require a payment bond for the benefit of, *inter alia,* persons who furnish materials to subcontractors engaged in the construction of a public improvement. Davidson moved for judgment declaring that defendants were liable for failing to require a payment bond and that it has a private right of action under State Finance Law § 137, and for partial summary judgment finding defendants liable for Davidson's damages. Indeck cross-moved for summary judgment dismissing the complaint on the ground that a payment bond was not required for the Project, a motion in which defendants WCIDA and the members

---

* Although the liens filed by plaintiff were bonded, Lien Law § 4 (1) states: "In no case shall the owner be liable to pay by reason of all liens created pursuant to this article a sum greater than the value or agreed price of the labor and materials remaining unpaid, at the time of filing notices of such liens". NEPCO had confirmed to Davidson that the amount remaining unpaid under its contract with Fels was not in excess of $25,000 and that there were other creditors of Fels asserting claims against it. According to a footnote in plaintiff's brief, those other claims amounted to $235,732.49, which would limit the amount plaintiff could recover on the bond to approximately $13,000.

joined. As a threshold determination in finding that defendants are liable for their conceded failure to comply with the statute, the Court found that the Project is a public improvement within the meaning of State Finance Law § 137 (1). We disagree.

State Finance Law § 137 was enacted in 1940 to protect laborers and materialmen who were contributing their efforts to "public improvement" contracts (L 1938, ch 707, § 1). The Lien Law generally provides protection for materialmen, but the amount recoverable by a materialman is limited to the balance due to the subcontractor on its contract (see, Lien Law §§ 4, 5). State Finance Law § 137 was intended to supplement those provisions when the project is pursuant to a State contract (see, *Chittenden Lbr. Co. v Silberblatt & Lasker*, 288 NY 396; *Syracuse Supply Co. v Seaboard Sur. Co.*, 167 AD2d 830). Thus, the question is whether the Project is a public improvement because it was constructed upon realty then owned by WCIDA and because citizens of the State will obtain some economic benefit from the Project, or whether the Project is not a public improvement because Indeck is its direct and primary beneficiary. We think the latter.

In *Matter of Erie County Indus. Dev. Agency v Roberts* (94 AD2d 532, *affd* 63 NY2d 810), this Court reviewed a similar project. There, the fee ownership was temporarily vested in an industrial development agency (IDA) as part of a financing scheme for a private printing and binding plant, and the primary financing vehicle was an industrial development bond. In holding that such a project was not subject to Labor Law § 220 (requiring prevailing wage rates for workers engaged in "public works"), this Court found that the project was, in essence, a private venture. A practical analysis of the IDA's participation in the project resulted in the conclusion that the agency was merely a facilitator of financing and a conduit for tax benefits (see, *Matter of Erie County Indus. Dev. Agency v Roberts, supra; Matter of Penfield Mech. Contrs. v Roberts*, 119 Misc 2d 105, *affd* 98 AD2d 992; *see also, Postler & Jaeckle Corp. v County of Monroe Indus. Dev. Agency*, 153 Misc 2d 392, *affd* 188 AD2d 1039). That analysis and conclusion are equally compelling and dispositive where, as here, defendants contend that the Project is not a "public improvement" within the meaning of State Finance Law § 137.

Construction of the statute itself leads to the same result. Article IX of the State Finance Law, within which section 137 is found, governs contracts *awarded* by the State. Construing

the statute as a whole *(see,* McKinney's Cons Laws of NY, Book 1, Statutes § 97), it is apparent that the agreements between WCIDA and Indeck constitute a contract different from that envisioned by the Legislature's enactment of State Finance Law § 137. That an IDA agreement does not fall within the mandates of the State Finance Law is further supported by the Legislature's 1992 amendment to section 2 (7) of the Lien Law, which provides that: "The term 'public improvement,' when used in this chapter, means an improvement of any real property belonging to the state or a public corporation; however, if the beneficial interest of an improvement is an entity other than the state or a public corporation notwithstanding legal title being vested in an industrial development agency created under article eighteen-A of the general municipal law, then such improvement shall be considered an improvement of real property subject to mechanics' liens on real property * * * For the purposes of this subdivision the term 'beneficial interest' shall mean the beneficial incidents of ownership of the improvement to include, but not be limited to, the right to possession, the right to claim tax benefits, if any, and the right to purchase or secure title to the improvement pursuant to an executory contract of sale, option agreement or lease" (L 1992, ch 662, § 1 [underscored language added by the amendment]). That amendment was necessary because construing IDA projects as public improvements within the meaning of the Lien Law rendered IDA projects immune from assertion of a mechanics' lien upon the real property for which the IDA held title *(see, Lincoln First Bank v Spaulding Bakeries,* 117 Misc 2d 892; *Albany County Indus. Dev. Agency v Gastinger Ries Walker Architects,* 144 AD2d 891, *appeal dismissed* 73 NY2d 1010, *lv denied* 74 NY2d 605). The practical result of viewing IDA projects as public improvements was to "effectively leave[ ] contractors, subcontractors and materialmen [on IDA projects] without effective remedies to ensure payment for their work or materials" (Mem of Sen Hannon, 1992 NY Legis Ann, ch 662, at 415). Thus, the Legislature amended the Lien Law so that plaintiffs in Davidson's position would have the same remedies under the Lien Law as do materialmen on exclusively private projects. In so doing, the Legislature implicitly evinced its understanding that typical IDA projects do not fall within the protective embrace of State Finance Law § 137.

Based on the foregoing, we conclude that the Project is not a public improvement within the meaning of State Finance Law § 137. Accordingly, the order and judgment of Supreme Court should be reversed, plaintiff's motion denied, defendants' cross motion granted, and the complaint dismissed against all defendants.

GREEN, J. P., PINE, CALLAHAN and BOEHM, JJ., concur.

Order and judgment unanimously reversed, on the law, without costs, motion denied, cross motion granted and complaint dismissed against all defendants.